**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
DON SPRINGMEYER, ESQ.
Nevada Bar No. 1021
JONATHAN WALLER, ESQ.
Nevada Bar No. 5538
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
jwaller@wrslawyers.com

*Attorneys for Certain HOA Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES R. ADAMS, et al.,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>Defendant. | Case No. 2:11-cv-00535-RLH-RJJ<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT** |

## REPLY

COME NOW Defendants Green Valley Ranch Community Association and The Lakes Association ("Movants" or "Defendants") and respectfully submit their Reply in support of their Motion to Dismiss the purported Federal False Claims Act, 31 U.S.C. §3729 *et seq.*(""FCA"), "whistleblower" First Amended Complaint ("Complaint"). The Complaint is due to be dismissed pursuant to F. R. C. P. 9(b), for failure of Plaintiffs James R. Adams and Puoy K. Premsrirut ("Relator-Plaintiffs") to plead fraud with anything approaching the requisite specificity and for Relator-Plaintiffs' failure to show with 9(b) specificity that they had direct and independent knowledge of the alleged false claims in order to be considered an "original source" under the FCA, in light of the fact that the information was indisputably in the public domain before the Complaint was filed. The Complaint is also due to be dismissed for Relator-Plaintiffs' failure to

timely serve the summons and complaint. This Reply is based on the papers and pleadings on file herein, the attached Memorandum of Points and Authorities, and any oral argument that may be entertained by this Court.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Defendants respectfully submit this Reply in support of their Motion to Dismiss Relator-Plaintiffs' meritless False Claims Act suit. Relator-Plaintiffs paint with too broad a brush, and their Complaint continues to run afoul of the express mandates of F.R.C.P. 9(b) ("Rule 9(b)"), and 31 U.S.C. § 3730(e)(4)(A). The Complaint, in which the government has understandably declined to intervene (*see* Doc.# 23), represents an extraordinary abuse of 31 U.S.C. §3729 *et seq.*, the federal False Claims Act ("FCA" or the "Act").

The Relator-Plaintiffs' Opposition is loosely based on the following meritless arguments: (1) that their Complaint purportedly complied with the particularity requirement of Rule 9(b); (2) that their FCA claim need not be pled with particularity because they purportedly demonstrated a "scheme"; (3) that Defendants' Motion is somehow premature; and (4) that Relator-Plaintiffs qualify as an "original source" under 31 U.S.C. § 3730(e)(4)(A). All four arguments fail.

Relator-Plaintiffs' Opposition begins by misstating the standard of review for examining a qui tam action brought under the FCA, ignoring the heightened pleading requirements in such cases. First, simply and only asserting that their purported "false claims" are pled with the requisite particularity under Rule 9(b) does not make it so. In fact, *nowhere* in Relator-Plaintiffs' Complaint do they plead the "who, what, when, where, and how" of the purported false claims to the government by an individual Defendant, much less Movants, as required by Rule 9(b) and Ninth Circuit case law interpreting the Rule's particularity requirement.[1]  Rather, the Complaint

---

[1] The Opposition casts the purported FCA claims in five categories: (1) excessive Super Priority Lien amounts; (2) excessive CC&R amounts; (3) fraudulent lien costs; (4) fraudulent lien release costs; and (5) non-incurred collection charges. Yet none of these claims include any specific allegations as to the Movants or to any other Defendant. The Opposition also contains no "new" support or elucidation of the purported claims, but rather merely reincorporates multiple paragraphs from the Complaint. It attaches only two exhibits, Defendant Green Valley Ranch Community Association's CC&Rs (upon which Relator-Plaintiffs previously relied) and the *Hagar* Complaint.

*caption* names some 1,279 Home Owners Associations ("HOAs") as Defendants in the style of the case, but nowhere in the *body* of the Complaint do the Relator-Plaintiffs ever refer to, name or identify a single HOA Defendant specifically, much less allege the "who, what, when, where and how" of a specific false claim to the government by any specific HOA, as required by Rule 9(b).

The Opposition's reference to the largely indecipherable purported "False Claims Spread Sheet" attached to the Complaint does not remedy the fatally vague and unarticulated claims, as it contains nothing more than a list of recorded liens, not the specific information required under the Rule. The pages and pages of the unspecified purported lien records which Relator-Plaintiffs append to their Complaint and self-servingly title the "False Claims Spread Sheet," in an attempt to give it weight, cannot support an FCA claim.

The "False Claims Spread Sheet" does not show or in any way specify any purportedly excessive lien amount, CC&R amount, lien costs, lien release costs or non-incurred collection charges, <u>much less any indicia of an actual "claim to the federal government for payment"</u> as required to state an FCA claim. The spreadsheet pages are not even titled and contain no headings to indicate to what they refer.[2] Indeed, as addressed *infra*, Relator-Plaintiffs' reference to these admittedly public records actually undermines their argument that they can be an "original source" under 31 U.S.C. §3730(e)(4)(A).)

The Complaint, even with its purported "False Claim Spreadsheet," fails to identify specifically <u>even one</u> false claim allegedly submitted by *any* HOA Defendant to Fannie Mae, Freddie Mac, or the FHA, <u>or the dollar amount of such claim</u>, as required under the FCA.

Perhaps in a tacit acknowledgment that the reams of general lien records attached to their Complaint cannot and will not pass muster under Rule 9(b), Relator-Plaintiffs' Opposition also includes a weak attempt to recast their false claims in terms of an overarching "scheme." The

---

[2] Far from stating the alleged fraudulent conduct with the specificity, particularity and plausibility required under Rule 9(b), the "False Claims Spreadsheet" is merely a speculative, conclusory and unspecified exhibit that in no way would require Defendants, or the Court, to go to considerable effort to determine (1) if a specific Defendant is actually identified therein; (2) to what the "recording" referred; (3) how much the lien amount totaled; (4) how much the purported overcharge totaled; etc. Rule 9(b) is specifically designed to preclude such onerous "fishing expeditions" on the part of relators.

1  "scheme" argument is merely an artful but impermissible attempt to skirt Rule 9(b)'s heightened
2  pleading requirements.  In fact, the very case upon which Relator-Plaintiffs rely for this meritless
3  argument, *Ebeid ex rel U.S. v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010), cert. denied, 131 S.Ct. 801,
4  178 L.Ed. 2d 546 (2010), does not support Relator-Plaintiffs' Opposition, but actually undermines
5  it.  Opposition, §I, p. 2. As demonstrated, *infra*, the *Ebeid* case in fact holds that even where a
6  relator contends, as Relator-Plaintiffs do in their Opposition, that there existed an overarching
7  fraudulent "scheme" of extended duration, Rule 9(b) nevertheless required the "who, what, when,
8  where and how" to be plead with specificity, at least as to one or more representative false claims.

9        The Ninth Circuit specifically requires that there be no relaxing of the particularity
10  requirement of Rule 9(b) for FCA suits alleging an overarching "scheme."  Merely alleging a
11  "scheme" is no talisman for a purported qui tam relator.  The Ninth Circuit, under Relator-
12  Plaintiffs' own cited authority, requires a showing with particularity of at least one representative
13  false claim made to the government, or the plausibility of such claim, even where a "scheme" is
14  alleged.  Moreover, the Ninth Circuit in *Ebeid* expressly notes that sheer numbers of unspecified
15  transactions are not sufficient to meet the requirements of Rule 9(b), further undermining Relator-
16  Plaintiffs' argument and the import of their purported "False Claim Spreadsheet." Thus, Relator-
17  Plaintiffs' inclusion of only self-selected language from that case is misleading.  The Complaint is
18  due to be dismissed under Relator-Plaintiffs' own cited authority.

19        As to Relator-Plaintiffs' additional claim that Defendants' Motion was "most premature"
20  due to the 60-day seal under the FCA, the argument is nothing more than a red herring.  When
21  service of process issues is wholly irrelevant to whether Relator-Plaintiffs Complaint is sufficient
22  under Rule 9(b) and 31 U.S.C. §3730(e)(4)(A).  The 60-day seal merely provides the government
23  an opportunity to intervene if it so chooses— which the government understandably declined to do
24  in this case. It has nothing to do with whether a complaint is ripe to pass scrutiny under a motion
25  to dismiss.  In fact, while Defendants' Motion to Dismiss is timely under the Federal Rules of
26  Civil Procedure, it is Relator-Plaintiffs have failed to comply with those very rules by neglecting
27  to effectuate service of process on Defendants within the 120-day period after the Court unsealed
28  the Complaint.  Relator-Plaintiffs' failure to effectuate service upon the Defendants within the

time allotted provides a separate and independent basis for dismissing their Complaint.

Finally, it is notable that Relator-Plaintiffs do not purport to be industry "insiders" with "independent knowledge" of the alleged false claims, as contemplated by the FCA. Instead, Relator-Plaintiffs readily concede they are "outsider" lawyers who have filed numerous similar complaints. Relator-Plaintiffs also concede in their Opposition that the allegations and transactions upon which their Complaint is based are grounded upon information which was indisputably publically available to them prior to filing their Complaint. Indeed, Relator-Plaintiffs assert, without any supporting evidence whatsoever, that they themselves conducted the research and "discovered" the alleged fraud, in an attempt to claim "original source" status to survive Defendants' Motion. However, Relator-Plaintiffs' argument that they are "original sources" is circular and without merit.

As amply demonstrated in Defendants' Motion, the allegations against the HOA Defendants were well known and had been publically disclosed in multiple fora prior to Relator-Plaintiffs' filing this Complaint. Relator-Plaintiffs have demonstrated no ground whatsoever to support their argument that they were an "original source" under 31 U.S.C. §3730(e)(4)(B), the exception to 31 U.S.C. §3730(e)(4)(A)'s public information bar. As "outsider" lawyers, Relator-Plaintiffs cannot conceivably come within the very narrow "original source" exception because they cannot demonstrate the requisite "direct and independent" knowledge.[3]

## II. LEGAL ARGUMENT

### A. Relator-Plaintiffs Argue an Erroneous Standard of Review.

Relator-Plaintiffs wrongly suggest that there is a strong presumption **against** dismissing an FCA claim in the Ninth Circuit. Opposition, §IIIA, p. 15-16. In fact, FCA claims are subjected to

---

[3] Defendants' Motion is based on F.R.C.P., Rule 9(b) and the failure of Relator-Plaintiffs properly to plead their purported FCA claims with the requisite specificity. As noted above, a separate and independent basis for dismissing the Complaint exists under Rule 4(m) for Relator-Plaintiffs' failure to serve process on Defendants within 120 days after the Court unsealed the Complaint. However, Defendants specifically reserve and do not waive the right to file an additional Motion to Dismiss under Rule 12(b), should Relator-Plaintiffs' somehow be allowed to amend their Complaint once again. However, because Relator-Plaintiffs already have amended their Complaint, and still far well short of the mark of a properly pleaded FCA claim, the Complaint should be dismissed with prejudice, rather than with leave to amend.

**heightened scrutiny** and pleading standards.  *See, e.g.,United States ex rel. Cafasso v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011), citing *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) ("The heightened pleading standard of Rule 9(b) governs FCA claims."); *United States ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1017-18 (9th Cir.1999) (noting that jurisdiction over qui tam actions is "limited" by the FCA and that a qui tam relator-plaintiff bears the burden of establishing subject matter jurisdiction "by a preponderance of the evidence.").

>    **B.    The Complaint Utterly Fails To Plead A False Claim With The Requisite Particularity Under Rule 9(b).**

Relator-Plaintiffs' meritless argument that their Complaint satisfies the strictures of Rule 9(b) begins with the erroneous assertion that "Movants cite not a single 9th Circuit Court of Appeals case" in their Motion.  Doc.#33, §IIIC, p. 17.  Relator-Plaintiffs overlook *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003), Motion at 6, upon which Movants rely as clear Ninth Circuit precedent that averments of fraud, such as those contained in Relator-Plaintiffs' FCA claims, **must** be accompanied by "the who, what, when, where, and how" of the misconduct charged.  While *Vess* does not address FCA claims specifically, it indisputably stands for the Ninth Circuit requirement that **any** claim sounding in fraud must be subjected to the heightened pleading requirements of Rule 9(b), or be disregarded. *Vess*, 317 F.3d at 1105-06.  The Ninth Circuit noted: "[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (citations omitted; emphasis in the original).

What is more, the Ninth Circuit has applied the *Vess* principle in the specific context of an FCA claim.  In *United States ex rel. Cafasso v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1062 (9th Cir. 2011), the Ninth Circuit affirmed an Arizona federal district court's dismissal of a plaintiff's qui tam complaint under the FCA for its failure to meet the heightened pleading requirements of Rule 9(b).  In *Cafasso*, the plaintiff-relator was a former employee who brought "conclusory" FCA claims (among others) against her government contractor employer. *Cafasso*, 637 F.3d at 1052.  The federal district court dismissed plaintiff-relator's qui tam claims, and she

appealed. *Id.* at 1053.

In affirming the dismissal of the FCA claims, the Ninth Circuit acknowledged with favor the rule it had recently stated in *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010), *supra* [Relator-Plaintiffs' own cited case]: "[T]o satisfy Rule 9(b), a pleading must identify "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso* 637 F.3d at 1055. In so ruling, the Ninth Circuit expressly adopted a dual test, requiring both particularity and plausibility, for whether a qui tam action can survive a Rule 9(b) motion to dismiss, such as the one pending in the case at bar. *Cafasso,* 637 F.3d at 1055. The Court succinctly stated:

> It seems to be a fairly obvious notion that a False Claims Act suit ought to require a false claim. [T]he [FCA] attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the "claim for payment." As we have said, **"[A]n actual false claim is the *sine qua non* of a[n FCA] violation.**"

*Id.* (citations omitted; emphasis supplied). Because of that plaintiff-relator's lack of sufficient allegation of an actual false claim under the FCA, the Ninth Circuit affirmed the dismissal of her qui tam claim. *Id.* at 1062.

Like the plaintiff-relator in *Cafasso*, the instant Relator-Plaintiffs have utterly failed to assert **even one** actual false claim, the *sine qua non* of an FCA claim in the Ninth Circuit. Nowhere in their Complaint do they allege an actual claim for payment by any Defendant, much less Movants, to the government, as required by the FCA, much less allege such claim with the specificity required by Rule 9(b). The Complaint is utterly devoid of the specific and identifiable "who, what, when, where and how" of the alleged conduct charged, and utterly devoid of a demand by these Defendants for payment from the government. The Complaint fails to clear the hurdle established by specific Ninth Circuit precedent construing Rule 9(b) related to FCA claims.

Even prior to *Cafasso*, the Ninth Circuit put its shoulder to the interpretation of Rule 9(b) in FCA cases in *United States ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir.1996). In the *Hopper* case, a special education teacher ("relator") attempted to bring a qui tam action under the FCA

against a defendant school district ("defendant") in connection with defendant's alleged failure to comply with certain state and federal laws pertaining to special education programs. *Hopper*, 91 F.3d at 1264. The plaintiff claimed that multiple purported regulatory violations by defendant created a viable cause of action under the FCA. *Id.* at 1265. Defendant school district moved for summary judgment on the ground that relator had not met the FCA's scienter and false claim requirements, and the federal district court agreed, stating:

> It appears to the court that the **plaintiff is operating under a fundamental misconception as to the breach and scope of the FCA. It is not the case that any breach of contract, or violation of regulations or law, or receipt of money from the government where one is not entitled to receive the money, automatically gives rise to a claim under the FCA.** Plaintiff assumes that if [defendant] has violated regulations or law governing Individuals With Disabilities Education Act (IDEA), it is automatically subject to suit under FCA. **The FCA is far narrower. It requires a false claim. Thus, some request for payment containing falsities, made with scienter (i.e., with knowledge of the falsity and with intent to deceive) must exist.** This does not mean that other types of violations of regulations or contracts, or conditions set for the receipt of moneys, or of other federal laws and regulations are not remediable; it merely means that **such are not remediable under the FCA or the citizen's suit provisions contained therein.**

*Id.* (emphasis supplied).

The Ninth Circuit agreed with the federal district court's analysis. *United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1265 (9th Cir. 1996). In affirming the dismissal of the qui tam action, the Ninth Circuit further explained that liability under the FCA attaches "not to underlying fraudulent activity, but to the 'claim for payment.'" *Hopper,* 91 F.3d at 1266. Like the district court below, the Ninth Circuit found that the relator misunderstood the breadth of the FCA and reiterated:

> This contention [defendants accepting federal funds while not in compliance with IDEA] suffers from the same fatal defect: lack of a false claim. Mere regulatory violations do not give rise to a viable FCA action.

*Id.* at 1267; *see also United States ex rel. Kitsap Physicians Service*, 314 F.3d 995, 1004 (9th Cir. 2002) ("In sum, [relator's qui tam] evidence totally fails to describe any false claims. [Relator] paints with far too broad a brush. In a qui tam action under the False Claims Act, proving that the

government has been defrauded requires much more than the evidence proffered by [relator]. It requires a real false claim, either one in the form of the false claim itself or evidence sufficient to identify such a claim."); *United States ex rel. Gonzolez v. Planned Parenthood of Los Angeles,* 2012 WL 2412080, *5 (C.D.Cal. 2012) ("Violations of laws, rules or regulations alone do not create a cause of action under the FCA.").[4]

Of the array of district court cases footnoted below which address the issue, *United States ex rel. Gonzalez v. Planned Parenthood of Los Angeles* is perhaps the most instructive in the instant case. 2012 WL 2412080 (C.D.Cal. 2012). In *Gonzalez,* a relator-plaintiff "insider", CFO of Defendant Planned Parenthood of Los Angeles, sued her employer and several regional Planned Parenthood affiliates (collectively "Planned Parenthood" or "Defendants"). *Gonzalez,* 2012 WL 2412080 at *1. The relator-plaintiff alleged that Planned Parenthood had overbilled the federal government for reimbursement of contraception it administered, in violation of California's FPACT and Medi-Cal programs. *Id.* The claims included (1) submission of false claims; (2) use of false statements or records; and (3) conspiracy to get false claims paid. *Id.* Defendants countered that the relator-plaintiff failed to state a claim under FCA because she did not adequately plead "falsity" with the specificity required by Rule 9(b). *Id.* The federal district court

---

[4] Accordingly, under clear Ninth Circuit precedent, a violation of a law or regulation, standing alone, is not sufficient proof of a false claim under the FCA. The instant Relator-Plaintiffs' Complaint runs afoul of the clear mandates of *Vess, Hopper*, and *Cafasso*, *supra*. *Hopper* especially brings the glaring defects of the Complaint into high relief because, like the plaintiff in that case, Relator-Plaintiffs here fundamentally misunderstand and inflate the reach and scope of the FCA. Their attempt obliquely to refer to undifferentiated, purported failures by Defendants to comply with certain regulations (the Super Lien Statute or, more tenuous still, the CC&Rs) in order to try to state a claim under the FCA—without specificity as to any particular Defendant, or as to any request for payment, made with scienter (i.e., knowledge of the falsity and intent to deceive) is wholly inadequate under these Ninth Circuit precedents.

Numerous district court cases within the Ninth Circuit's purview abound and are in complete accord with *Vess, Cafasso* and *Hopper* as well. *United States ex rel. Gonzolez v. Planned Parenthood of Los Angeles,* 2012 WL 2412080 (C.D.Cal. 2012); *United States ex rel. Sallade v. Orbital Sciences Corp.,* 2008 WL 114888, *3 (D.Ariz.) ("Liability under the FCA attaches not to the underlying fraudulent scheme, but to the submission of the false claim itself."); *Visendi v. Bank of America Corp.,* 2011 WL5883449 (E.D.Cal. 2011) ("In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum "identify[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.") (brackets in original; citations omitted); *United States ex rel. Frazier v. Iasis Healthcare Corp.*, 812 F.Supp.2d 1008 (D. Ariz. 2011) (dismissed complaint with prejudice because relator-plaintiff filed to plead with the requisite Rule 9(b) particularity circumstances including the "who, what, when, where, and how of the misconduct charged."); *United states ex rel. Grayson v. Genoa Healthcare*, 2011 WL2670079 (W.D. Wash. 2011) (granting motion to dismiss because qui tam plaintiff's FCA theories "fail to meet the particularity requirements of Rule 9(b)").

agreed with Defendants and dismissed the FCA action with prejudice, noting that the crux of the relator-plaintiff's argument was an improper overcharge under the applicable regulations, and that such "overcharge" theory was deficient under the FCA, stating:

> No case creates or imposes FCA liability merely where one overcharges the government—the overcharging must be committed in conjunction with a false statement that is a lie. *See Hagood v. Sonoma County Water Agency,* 81 F.3d 1465, 1478 (9th Cir. 1996).

*Id.* at *5.

The district court in *Gonzolez* concluded that the relator-plaintiff pleaded facts that merely amounted to allegations that Planned Parenthood had knowingly violated certain state and federal regulations, and such did not "support a plausible inference that defendants misrepresented what they were billing." *United States ex re. Gonzolez v. Planned Parenthood of Los Angeles,* 2012 WL 2412080, *6 (C.D.Cal. 2012) (citing *Hopper, supra*, that "violations of laws, rules and regulations do not create a cause of action under the FCA").[5]

Like the *Gonzalez* plaintiff, the instant Relator-Plaintiffs merely make blanket accusations of regulatory and contract violations on the part of Defendants, but nowhere in the original Complaint, First Amended Complaint, or the current Complaint, do they state a single specific false claim with the particularity required by Rule 9(b). The large numbers of liens listed in the purported "False Claims Spreadsheet," like the *Gonzalez* relator-plaintiffs' numerous claims, do not mean those claims were false, indeed, do not even indicate that a "claim" within the meaning of the FCA was actually tendered.

---

[5] The Court also refused relator-plaintiff's attempt to create a "false certification" claim under the FCA because of the fatal absence of an actual submittal. *Gonzalez, supra*, at *7. Thus, the only claim left to plaintiff was an "implied" false certification claim, which also failed. The district court noted that to state a claim for "implied" false certification in the Ninth Circuit, a complaint must plead with Rule 9(b) particularity allegations that provide a reasonable basis (1) that defendant explicitly undertook to comply with a law, rule or regulation that is implicated in submitting the false claim (2) claims were indeed submitted, (3) even though defendant was not in compliance with a law, rule or regulation. *Id.* The Court required more than relator-plaintiff's "blanket assertion" that defendants submitted false claims. *Id.* at *8. Instead, the Court noted that to plead an "implied" false certification claim adequately, a plaintiff must plead the "who, what, when, where and how" of the alleged false claim with particularity. *Id.* "That defendants submitted *many* claims does not mean the claims were false. Because plaintiff has failed to add sufficient detail indicating which of defendants' claims or statements were *false* (as opposed to non-compliant or illegal), the court concludes that the federal FCA claims cannot be saved by further amendment and dismisses them with prejudice." *Id.* at *9 (emphasis in the original).

**C.   Relator-Plaintiffs' "False Scheme" Theory Also Cannot Pass Muster Under Rule 9(b).**

Relator- Plaintiffs try in their Opposition to sidestep the particularity requirements of Rule 9(b) by arguing an overarching and "years long" scheme by "hundreds" of undifferentiated Defendants to defraud the federal government.  Relator-Plaintiffs wrongly suggest that compliance with Rule 9(b) is unnecessary and inadvisable when a plaintiff alleges a scheme involving multiple defendants over many years, as it would purportedly necessitate that the "same allegation must be physically repeated over 8,000 times in the complaint."  Doc.#33, at 21.  Defendants suggest that strict compliance with Rule 9(b) would require a plaintiff to "draft a 10,000 page complaint listing every single transaction." *Id.*, at 22.

Obviously, the law governing multiple defendants in a purported fraudulent "scheme" does not require a "10,000 page" complaint, or that each and every claim be given in exacting detail.  Nevertheless, the cases make plain that some representative false claim—<u>at least one</u>-- must be plead with Rule 9(b) particularity and plausibility.  *See Gonzolez v. Planned Parenthood, supra,* 2012 WL 2412080, at *8; *U.S. ex rel. Hopper, supra,* at 1265.  A plaintiff may not meet his burden of proving fraud with specificity under Rule 9(b) merely by making blanket accusations, without stating <u>even one</u> purported "false claim" with particularity, including the requisite "who, what, when, where and how." *See United States ex rel. Kitsap Physicians Service*, *supra,* (dismissing a complaint where relator-plaintiff provided neither an actual false claim or any specific evidence to identify any false claim).  Where, as here, a plaintiff asserts a "conspiracy" or "scheme" of fraud by multiple defendants over many years, the plaintiff must, at a minimum, identify the role of each defendant in the alleged false scheme. *See United States ex re. Ebeid v. Lungwitz*, *supra*, at 998-999 [Relator-Plaintiffs' own cited authority]; *United States ex rel. Grayson v. Genoa Healthcare*, 2011 WL 2670079 (W.D. Wash. 2011); *Swartz v. KPMG*, 476 F.3d 756, 764 (9th Cir. 2007); *Moore v. Kayport Package Express*, 855 F.2d 531, 541 (9th Cir. 1989); *Visendi v. Bank of Amer. Corp., supra*; *United States ex rel Kitsap Physicians Services*, *supra,* at 1003 ("The False Claims Act, then, focuses on the submission of a claim, and does not concern itself with whether and to what extent there exists a menacing underlying scheme."); *Gonzolez v.*

*Planned Parenthood supra,* at *5 ("Plaintiff does allege that defendants conspired with each other to form a scheme, but "plaintiff fails to support this conclusory allegation with a single factual allegation specifying how any defendant tried to hide its billing practice."). Relator-Plaintiffs proffer not a single representative false claim with specificity. *See Cafasso v. General Dynamics supra*, at 1047 ("**This type of allegation, which identifies a general sort of fraudulent conduct but specifies no particular circumstance of any discrete fraudulent statement is precisely what Rule 9(b) aims to preclude.**") (emphasis supplied; citations omitted).

Relator-Plaintiffs misleadingly proffer limited portions of *United States ex rel. Ebeid v. Lungwitz, supra*, as support for their argument that their bare allegations of a "scheme," coupled with the pages and pages of general lien records appended to their Complaint (the purported "False Claims Spreadsheet"), are sufficient under Rule 9(b). Doc.#33, pp.2, 17.[6] In fact, the Ninth Circuit in *Ebeid* actually affirmed the district court's **dismissal with prejudice** of that qui tam plaintiff-relator's complaint for lack of particularity, even where a "scheme" was alleged. *Eibed, supra*, at 1001. *Ebeid* warrants consideration in its entirety.

In *Ebeid*, the relator-plaintiff was a physician who brought his purported FCA action against certain healthcare businesses ("defendants") for allegedly submitting false claims to the federal government for Medicare reimbursement. *Ebeid,* 616 F.3d at 994. The physician raised a theory of "implied false certification" under the FCA by alleging that all the Medicare bills submitted by the defendants implied compliance with the governing rules as a precondition to payment. *Ebeid*, 616 F.3d at 996. The Ninth Circuit found that even this implied false certification "scheme" failed to meet the requirements of Rule 9(b), noting (right after the limited portion proferred in Relator-Plaintiffs' Opposition for a contrary argument) that traditional Rule 9(b)

---

[6] Likewise, after objecting—incorrectly—to Movants' purported lack of Ninth Circuit precedent in their Motion, Relator-Plaintiffs proceed to rely only on the *Ebeid* case, which actually undermines their argument, and certain Fifth Circuit precedents, ignoring the ample Ninth Circuit authorities applicable to qui tam actions in this circuit. Doc.#33, p. 18-19. In addition, Relator-Plaintiffs misstate the precedential value of *U.S. ex rel Sallade v. Orbital Sciences Corp.,* 2008 WL114888 (D.Ariz. 2008) for the absurd proposition that they do not need to meet the particularity requirements of Rule 9(b) because of their "complex and far-reaching fraudulent scheme" theory. *Id*. at p. 20. The Arizona federal district court in *Sallad* , as in *Ebeid*, in fact <u>dismissed</u> several counts of the relator-plaintiff's FCA complaint, due to plaintiff's failure to comply with Rule 9(b), including the lack of the "who, what, when, where, and how" of a knowing submission of a false claim as required by the Rule.

pleading standards in the cases of a broad scheme should **not** be relaxed, stating:

> To jettison the particularity requirement simply because it would facilitate a claim by an outsider is hardly grounds for overriding the general rule, especially because the FCA is geared primarily to encourage insiders [as opposed to outsider lawyers, as here] to disclose information necessary to prevent fraud on the government.
>
> While [plaintiff] is not required to allege "all facts supporting each and every instance" of billing submitted in violation [of applicable rules and laws], Rule 9(b) still requires [plaintiff] to plead the fraud with some level of specificity.  Indeed, even under a relaxed standard, [plaintiff] must provide enough **detail** "to give [defendant] notice of the **particular** misconduct which is alleged to constitute the fraud charged so that [she] can defend against the charge not just deny that [she] has] done anything wrong.  [Plaintiff] must also supply reasonable indicia that **false claims were actually submitted**.  The Second Amended Complaint does neither.

*Id.* at 999 (emphasis supplied).

> Although [plaintiff] articulates the framework of a claim for implied false certification, he fails to plead it with the particularity required of Rule 9(b).  We affirm the district court's dismissing the Second Amended Complaint with prejudice.

*Id.* at 1001.

Like the *Ebeid* plaintiff, the instant Plaintiffs may likewise have articulated some global and conclusory "dragnet" indictment of the HOA Defendants under the Super Lien Statute and the CC&Rs, but they have not included one single false claim with the particularity required by Rule 9(b).  Accordingly, their Complaint, too, should be dismissed with prejudice.

### D.     Defendants' Motion Is Not Premature.

Relator-Plaintiffs' Opposition also includes the rather odd argument that Defendants' Motion to Dismiss is premature, since the Complaint has not been served due to its having been under seal pursuant to 31 U.S.C. §3730(b)(2).  This "prematurity" argument should be summarily dismissed, as it is not supported by any federal rule or statute.  The purpose of the sixty-day seal under 31 U.S.C. §3730(b)(2) is to provide the federal government an opportunity to ascertain privately whether it wishes to intervene, should it determine that intervention is advisable.  *See Erickson ex rel. United States v. American Institute of Biological Sciences*, 716 F.Supp. 908, 912 (E.D.Va. 1989); *United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 998 (2d Cir.

1995).  While it is true that Defendants are not <u>required</u> to respond to an FCA complaint under the rule until it is unsealed, nothing in 31 U.S.C. §3730 suggests that a defendant <u>may</u> not so respond, either by answering the charges, or by filing a motion to dismiss, at any time, even during the sixty-day period.  *See* 31 U.S.C. §3730(b)(3).  Here, the federal government has understandably declined to intervene in this meritless lawsuit, the Court has ordered the complaint unsealed, and the Defendants have timely filed their Motion under the Federal Rules of Civil Procedure. Relator-Plaintiffs' argument in Section IIIB of the Opposition is irrelevant and without any colorable basis of support, and should be disregarded.

### E. Relator-Plaintiffs Failed to Effectuate Service Within The 120 Days Allotted by Fed.R.Civ.P. 4(m).

While Defendants' Rule 9(b) Motion to Dismiss is unquestionably timely under the Federal Rules of Civil Procedure, it is additionally notable that Relator-Plaintiffs have failed to comply with Rule 4(m) of those rules by neglecting to effectuate service of process on these, or indeed any, Defendants within the 120-day period allowed after the Court unsealed the Complaint. Relator-Plaintiffs' failure to effectuate service upon the Defendants within the time allotted provides a separate and independent basis for dismissing their Complaint.  Fed.R.Civ.P. 4(m) requires a plaintiff to serve a summons and complaint upon a defendant within 120 days of filing a complaint. *Id.*  In a qui tam case, the 120-day period begins to run after the government declines to intervene and the court unseals the complaint pursuant to 31 U.S.C. §3730(b). *See, e.g., Mills ex rel. United States v. New York*, 2000 WL 863451, at *1-2 (S.D.N.Y. 2000); *United States ex rel. Bowman v. Computer Learning Ctrs.,* 73 App's 735, 736 (5th Cir. 2003); *United States ex rel. Gudur v. Texas Dep't of Health*, 2002 WL 511483, at *1-2; *United States ex rel. Howard v. Life Care Centers of America, Inc.*, 2005 WL 264939 (E.D.Tenn. 2005) ("Once the complaint is unsealed, service <u>must</u> be made within 120 days to comply with Rule 4(m) of the Federal Rules of Civil Procedure.") (citations omitted; emphasis supplied).

On April 10, 2012, the federal government filed its Notice of Election to Decline Intervention in this case.  Accordingly, the Court unsealed the Complaint on April 24, 2012. Thus, Relator-Plaintiffs were required by Rule 4(m) to perfect service on Defendants on or before

1100334.1                                     -14-

August 24, 2012 (120 days after the Complaint was unsealed).  Relator-Plaintiffs confess in their Opposition, p.16, that they had not served Defendants as of the date of that Opposition, August 27, 2012.  Accordingly, a separate and independent ground for dismissing the Complaint exists due to Relator-Plaintiffs' failure to comply with Rule 4(m), including a failure to request any extension for good cause before the allowed time period had run.

### F. Relator-Plaintiffs Are Not an "Original Source" Under 31 U.S.C. §3730(e)(4)(A).

Finally, Relator-Plaintiffs' own Opposition makes clear on its face that it is based entirely on publicly disclosed information within the meaning of 31 U.S.C. §3730(e)(4)(A).  The very liens which constitute their purported "False Claims Spreadsheet" were indisputably publicly recorded and available.[7]  Thus, it is undisputed and incontrovertible that the Complaint is barred 31 U.S.C. §3730(e)(4)(A) unless the Relator-Plaintiffs can qualify as an "original source" under 31 U.S.C. §3730(e)(4)(B). That section defines the "original source" exception as follows:

> For the purposes of this paragraph, "original source" means an individual who either (1) prior to public disclosure under subsection (e)(4)(A), has voluntarily disclosed to the government the information on which allegations or transactions in a claim are based, or (2) who has knowledge **that is independent of** and materially adds to the publicly disclosed allegations or transactions, and who voluntarily provides the information to the government before filing an action under this section.

31 U.S.C. §3730(e)(4)(B) (emphasis supplied).  Not surprisingly, Relator-Plaintiffs make the bald and self-serving assertion that they should be considered "original sources" based on their alleged "investigation and discovery of," and filing of multiple similar lawsuits related to, the Defendant HOA's purported fraudulent activities prior to filing this lawsuit. Doc.#33, pp. 23-26.  This is hardly a specific allegation of independent knowledge that materially adds to publicly disclosed allegations.  Relator-Plaintiffs' "original source" argument is circular and without merit.

The FCA was created not to pad the pockets of **outsider** lawyers such as Relator-Plaintiffs,

---

[7] Recorded documents such as the liens attached to the Complaint are "reports" that bar Relator-Plaintiffs' suit under the broad scope of 31 U.S.C. §3730(e)(4)(A).  *See Schindler Elevator Corp. v. United States ex rel Kirk*, 131 S.Ct. 1885, 1891-93 (2011).

but rather to encourage corporate **insiders** to expose their employers' malfeasance against the federal government. *See, e.g., United States ex re. Ebeid v. Lungwitz*, 616 F.3d 993, *supra*, at 994 (9th Cir. 2010); *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir.1996) (noting that the archetypical qui tam FCA action is filed by an **insider** who discovers his **employer** has overcharged under a government contract). The Ninth Circuit explained the FCA's application to "insiders," as opposed to "outsiders" such as the Relator-Plaintiffs clearly in *United States ex rel. Hansen v. Cargill, Inc*., 107 F.Supp.2d 1172, 1185 (N.D.Cal. 2000), stating:

> One purpose of the FCA is to encourage individuals with true 'knowledge' to come forward to provide such information to the Government. That purpose is not "served by allowing a relator to maintain a quit [sic] tam suit based on pure speculation or conjecture."….
>
> Moreover…another purpose of the FCA is to "encourage *insiders* to come forward with such information where they would otherwise have little incentive to do so. [Relator] is not an insider with little incentive to come forward. He is the Executive Director of a non-profit watchdog organization whose express purpose is to uncover such alleged fraud. To hold that [relator] is an original source would mean that anyone—an insider or an outsider—who conducts an investigation and learns of alleged fraud from whatever sources may maintain a qui tam action… Such a holding would render the statutory requirement that an original source have "direct" "firsthand" knowledge meaningless. While [relator] should be commended for his service to the public, he does not have direct knowledge of the alleged fraud at issue here and thus is not an "original source."

(internal citations omitted; emphasis in the original). Importantly, the Ninth Circuit also noted in that case that an FCA claim may be barred if the complaint is "'based upon' the publicly disclosed information, *even if the plaintiff made the disclosure*," as the instant Relator-Plaintiffs allege here. *Hansen*, 107 F.Supp.2d at 1177 (citations omitted; emphasis in the original); *see also United States ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1020 (9th Cir.1999) (agreeing with district court that relator could not be an original source because he could not show that he had "firsthand knowledge of the alleged fraud, and that he obtained this knowledge through his 'own labor unmediated by anything else'", "his investigation merely added a legal name to describe the alleged circle of facts"). Accordingly, under clear Ninth Circuit precedent, the instant Relator-Plaintiffs cannot be considered to come within the "original source" exception because they lack the necessary "direct and independent knowledge."

The Ninth Circuit has further examined what qualifies as an "original source" under 31 U.S.C. §3730(e)(4)(B) in *United States ex rel Meyer v. Horizon Health Corp.,* 565 F.3d 1195 (9th Cir. 2009). The Court there determined that the "public disclosure bar" of 31 U.S.C. §3730(e)(4)(A) sets up a two-tiered inquiry: (1) whether a public disclosure exists [which is incontrovertible in the instant case]; and, if so, (2) whether the relator is an "original source" within the meaning of 31 U.S.C. §3730(e)(4)(B) exception to the public information bar. *Meyer,* 565 F.3d at 1199.[8] .

In *Meyer*, relators filed their lawsuit some months after similar allegations were publicly disclosed in another lawsuit in state court that plainly shared substantial identity with the allegations of their complaint. *Meyer,* 565 F.3d at 1199. Accordingly, the federal district court dismissed the complaint as barred by 31 U.S.C. §3730(e)(4)(A). *Id*.

The Ninth Circuit agreed with the district court that the relators could not be an "original source" because they could not show they possessed "direct and independent knowledge" of the information upon which their allegation is based. *Id*. at 1201. The Ninth Circuit requires the following, specifically pleaded under Rule 9(b), in order to qualify for the "original source" exception: (1) direct and independent knowledge of the information upon which the allegations are based (2) voluntarily provided to the government before filing a qui tam action and (3) had a hand in the public disclosures that are part of the suit. *Id*. The Court found the relators' bald conclusion that they met these requirements unconvincing because they failed to show "direct and independent knowledge." *Id.*

> To show "direct and independent knowledge" for original source purposes, relator must show that they had **firsthand knowledge** through his own labor **unmediated by anything else.**

*Id.* (citations omitted; emphasis supplied); *see also United States ex rel. Hansen v. Cargill, Inc*.,

---

[8] Relators bear the burden of establishing this Court's subject matter jurisdiction based on 31 U.S.C. §3730(e)(4)(B) by a preponderance of the evidence. Relator-Plaintiffs' bald self-characterization as "original sources" in the instant case neither meets this burden nor vests this Court with jurisdiction.

*supra,* 107 F.Supp.2d 1172 (N.D.Cal. 2000); *United States ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*, *supra,* 197 F.3d 1014 (9th Cir.1999); *United States ex rel. Springfield*, 14 F.3d 645 , 656 (D.C.App. 1994) (defining "direct" knowledge for original source purposes as firsthand knowledge "marked by absence of an intervening agency" and "independent" knowledge as "knowledge that is not dependent on public disclosure").

Not only do Relator-Plaintiffs fail to show how their purported outside "investigations" to support their filing multiple lawsuits can qualify them for the "original source" exception under *Meyer*, but they also cannot explain how their purported "False Claims Spreadsheet," consisting of nothing more than *publicly disclosed* lien records does not actually undermine their "original source" argument, as it implies a lack of the requisite "direct and independent" knowledge. *See Springfield*, *supra*, at 655-656 ("where the general practice has already been publicly disclosed," a relator may not avoid the public disclosure bar by adding "more specific details about what happened.").

Indeed, Relator-Plaintiffs' own allegations that they "researched" the alleged false practices as "outsiders" necessarily implies that their knowledge was derived secondhand, which means they cannot be considered original sources. *See United States ex rel. Hansen v. Cargill, Inc.*, *supra,* 107 F.Supp.2d 1172, 1185 (N.D.Cal. 2000); *United States ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*, *supra,* 197 F.3d 1014, 1020 (9th Cir.1999). The fact that Relator-Plaintiffs may have conducted collateral research in order to support their filing multiple "dragnet" lawsuits cannot establish the requisite "direct" knowledge within the meaning of the FCA. *Id.* A person who learns of fraud from researching public disclosures such as recorded liens can never be an original source. *See In re Natural Gas Royalties Qui Tam Litigation,* 467 F.Supp.2d 1117 (D. Wyo. 2006) (holding that in order to demonstrate "original source" status based on "investigations," a relator must show that the information was not derived from others and had not previously been in the public domain); *United States ex rel. Hager v. Countrywide Home Loans Servicing*, 812 F.Supp.2d 1211, 1219 (D.Nev. 2011) (this court holding that plaintiff-relators could not be considered original sources because they drew their information from forms filed with county recorders, *i.e.,* their knowledge was not "direct and independent, stating "[t]he

allegations demonstrate that Plaintiffs learned of the information by "researching" the State of Nevada Declaration of Value forms….Thus, Plaintiffs did not have direct and independent information of the contents of the forms because none of the Plaintiffs filled out any of the Declaration of Value forms.  As such, Plaintiffs are not original sources of information and the court dismisses this case for lack of statutory jurisdiction.")   The disclosure bar of 31 U.S.C. §3730(e)(4)(A) likewise requires dismissal of Relator-Plaintiffs' claims here.

### III.  CONCLUSION

The Complaint is due to be dismissed pursuant to Rule 9(b) for failure of Relator-Plaintiffs to plead fraud with anything approaching the requisite specificity, and for failure to show with 9(b) specificity that they had direct and independent knowledge of the alleged false claims in order to be considered an "original source" under the FCA, in light of the fact that the information was indisputably in the public domain before the action was filed. The Complaint is also due to be dismissed pursuant to F.R.C.P. 4(m) for Relator-Plaintiffs' failure to perfect service within the 120 days allotted by that rule.  Because Relator-Plaintiffs had the opportunity to correct the fatal flaws of their Complaint by amendment, and failed to do so, the dismissal should be with prejudice.

DATED this 6th day of September, 2012.

**WOLF, RIFKIN, SHAPIRO,**
**SCHULMAN & RABKIN, LLP**


By:     /s/ Don Springmeyer
DON SPRINGMEYER, ESQ.
Nevada Bar No. 1021
JONATHAN WALLER, ESQ.
Nevada Bar No. 5538
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
*Attorneys for Certain HOA Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of September, 2012, a true and correct copy of **REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT** was served via the United States District Court CM/ECF system on all parties or persons requiring notice, and that a copy was placed in the United States mail, first class postage prepaid, addressed to:

John Warshawsky, Esq.
Trial Attorney
U.S. Department of Justice
Civil Division Fraud Section
601 D. Street, N.W., Room 9132
Washington, D.C. 20004

By  */s/ Nina Miller*
Nina Miller, an Employee of
WOLF, RIFKIN, SHAPIRO, SCHULMAN &
RABKIN, LLP

1100334.1

-20-