1  LAW OFFICES OF SIGAL CHATTAH
   SIGAL CHATTAH, ESQ.
2  Nevada Bar No. 8264
   5875 S. Rainbow Blvd., Suite 204
3  Las Vegas, Nevada 89118
   Tel: (702) 360-6200
4   Fax: (702) 643-6292
   chattahlaw@gmail.com
5  *Attorney for Relators*

6                    **UNITED STATES DISTRICT COURT**

7                         **DISTRICT OF NEVADA**

8

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex. rel.*, | Case No.: 2:11-cv-00535-RLH-RJJ |
| Plaintiff, | |
| JAMES R. ADAMS and PUOY K. PREMSRIRUT, | **SECOND AMENDED COMPLAINT** |
| Relators, | |
| vs. | |
| AURORA LOAN SERVICES LLC; BAC HOME LOANS SERVICING LP; BANK OF AMERICA NA; CHASE HOME FINANCE LLC; CITIMORTGAGE INC; COUNTRYWIDE HOME LOANS SERVICING LP; COUNTRYWIDE HOME LOANS INC.; EMC MORTGAGE CORPORATION; GMAC MORTGAGE CORPORATION; JPMORGAN CHASE BANK NA;  NATIONSTAR MORTGAGE LLC; OCWEN LOAN SERVICING LLC; ONEWEST BANK FSB; PHH MORTGAGE CORP; US BANK NA; WELLS FARGO BANK NA; DOES 1 through 500; and ROE ENTITIES 1 through 500, inclusive. | |
| Defendants | |

23      The United States of America, by and through qui tam relators Puoy K. Premsrirut and James

24  R. Adams ("Relators"), brings this action under 31 U.S.C § 3729, et seq., as amended (False Claims

25  Act) to recover all damages, penalties and other remedies established by the False Claims Act on

26  behalf of the United States.

27

28

**JURISDICTION & VENUE**

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and 31 U.S.C. § 3730, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 (the **"False Claims Act"**).

2.     This action is not based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or General Accounting Office report, hearing, audit, or investigation, or from the news media. Morever, Relators have direct and independent knowledge of the information on which the allegations of fraud and false claims are herein based and they have voluntarily investigated, researched, developed the information and have provided the information to the Plaintiff.  Thus, there have been no public disclosures of the allegations or transactions contained herein that bar jurisdiction under 31 U.S.C. § 3730(e).

3.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because multiple Defendants can be found, reside and transact business in the State of Nevada and the acts engaged in by multiple Defendants, which are proscribed by 31 U.S.C. § 3729, occurred in the State of Nevada and other states and territories of the United States.

4.     Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated in the State of Nevada and one or more of the Defendants may be found in the State of Nevada. In addition, for purposes of venue, Defendants are corporations and, as such, are deemed to reside in this judicial district because they are subject to personal jurisdiction in the State of Nevada.

**THE PARTIES**

5.     Relators James R. Adams and Puoy K. Premsrirut have discovered and have actively investigated a years long and expansive scheme by Defendants to defraud the United States government which includes the Federal National Mortgage Association (**"Fannie Mae"**) and the Federal Home Loan Mortgage Corporation (**"Freddie Mac"**) (collectively, **"Plaintiff"**).

6.    Relators are the original source of the information described herein as they have independently uncovered and voluntarily disclosed to the Government the information on which allegations or transactions in this action are based, or have knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, if any, and have voluntarily provided the information to the Government before the filing of this action.

7.    Defendants transact business in the State of Nevada and in other states and territories of the United States and have contracted with Plaintiff to sell to Plaintiff and/or service for Plaintiff mortgage loans.

8.    The true names and capacities, whether individual, corporate, or otherwise, of Defendants herein designated as DOES 1 through 500 and ROE ENTITIES 1 through 500 inclusive, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each of said Defendants are responsible in some manner for the events and happenings alleged herein and proximately caused the injuries and damages herein alleged.   Plaintiff will seek leave to amend this Complaint to allege their true names and capacities as they are ascertained.

## FACTUAL ALLEGATIONS

### I

**A.    Fannie Mae and Freddie Mac and FHFA Conservatorship**

9.    Fannie Mae is a government sponsored enterprise (**"GSE"**) founded in 1938, the purpose of which is to expand the secondary mortgage market by purchasing mortgage loans from participating lenders and securitizing the mortgages in the form of mortgage-backed securities. This allows mortgage lenders to reinvest their assets into more lending.

10.    Freddie Mac is also a GSE.  Freddie Mac was created in 1970 to expand the secondary market for mortgages in the United States.

11.    In 2008, Fannie Mae and Freddie Mac had purchased about 80% of all new home mortgages in the United States. Their combined investment portfolios held mortgage assets (loans and mortgage backed securities) valued at $1.5 trillion (as of June 30, 2008).

12.     The Housing and Economic Recovery Act of 2008, enacted July 30, 2008, provided the authority for the United States government's takeover of Fannie Mae and Freddie Mac.

13.     The act created a new GSE regulator, the Federal Housing Finance Agency (**"FHFA"**), with the authority to take control of either Fannie Mae and Freddie Mac to restore them to sound financial conditions.

14.     FHFA is a federal agency.

15.     Fannie Mae and Freddie Mac have been under FHFA conservatorship since September 6, 2008.

16.     As conservator, FHFA succeeded to all rights, titles, powers and privileges of Fannie Mae and Freddie Mac and of any shareholder, officer or director of the Fannie Mae and Freddie Mac with respect to the Fannie Mae and Freddie Mac and their assets.

**B.      Mortgage Backed Securities**

17.     Both Fannie Mae and Freddie Mac buy home mortgages from the originating lenders or assignees of the originating lenders (**"Selling Lenders"**) and  repackage them into mortgage pools known as mortgage-backed securities (**"MBS(s)"**).

18.     After purchase of the mortgage loans from the Selling Lenders, Fannie Mae and Freddie Mac will either (a) sell the MBSs, or (b) hold them in their own investment portfolios.

19.     The Fannie Mae and Freddie Mac MBSs that are sold to investors (**"Certificate Holders"**) are sold via certificates with each certificate representing a *pro rata* undivided beneficial ownership interest in the MBS.

20.     Fannie Mae and Freddie Mac holds the MBSs in a trust on behalf of the Certificate Holders (the **"MBS Trusts"**).

21.     As a Fannie Mae or Freddie Mac MBS investor, each Certificate Holder is entitled to and receives a *pro rata* share of the scheduled principal and interest from mortgagors on the loans backing the MBS.

22.     Interest is paid to the Certificate Holder at a specific interest rate and the Certificate Holder also receives any unscheduled payments of principal.

23.    Fannie Mae and Freddie Mac guarantee to the MBS Trusts that on each distribution date Fannie Mae and Freddie Mac will supplement amounts received by the MBS Trusts as required to permit payments on the certificates in an amount equal to the aggregate amounts of scheduled and unscheduled principal payments of the mortgage loans, and an amount equal to one month's interest on the certificates.

24.    In addition, Fannie Mae and Freddie Mac guarantee to the MBS Trusts that Fannie Mae and Freddie Mac will supplement amounts received by the MBS Trusts as required to make the full and final payment of the total unpaid principal balance of the certificates.

25.    Thus, Fannie Mae and Freddie Mac fully guaranty the payment to the MBS Trusts of all principal amounts of the underlying mortgage loans comprising the MBS.

**C.     Real Estate Owned Property- Short Sales and Foreclosures**

26.    In addition to their guaranty responsibilities, under the MBS Trust agreements, Fannie Mae and Freddie Mac are required in some instances (and have the option in other instances) to purchase a mortgage loan or real estate acquired as a result of a default (**"real estate owned property"** or **"REO property"**) from the MBS Trusts.

27.    After U.S. house sales prices peaked in mid-2006 and subsequently began their steep decline, adjustable-rate mortgages began to reset at higher interest rates and mortgage delinquencies and foreclosures soared.

28.    As a result, in recent years, many states have experienced significant increases in mortgage foreclosures.

29.    Depending on a particular troubled borrower's circumstances, as part of Fannie Mae's and Freddie Mac's loss mitigation efforts, Fannie Mae and Freddie Mac may accept a "short payoff" of the mortgage loan or foreclose on the mortgaged property.

30.    With a short payoff, the full principal amount of the loan becomes due, but Fannie Mae and Freddie Mac accepts less than the outstanding unpaid principal balance of the mortgage loan from sale or refinancing proceeds received by the borrower.

31.    In cases where Fannie Mae or Freddie Mac accepts a short payoff by the borrower, Fannie Mae

1   and Freddie Mac still pays the full stated principal balance of the mortgage loan through to the

2   Certificate Holders (even if the stated principal balance is more than the payoff proceeds

3   received by Fannie Mae and Freddie Mac).

4   32.   In non-short sale payoff cases where Fannie Mae and Freddie Mac cause the foreclosure of a

5   mortgaged property, the REO property typically is purchased by Fannie Mae and Freddie Mac

6   from the related MBS Trust within sixty (60) days after the date of that the foreclosure sale is

7   completed.

8   33.   Fannie Mae and Freddie Mac also pay the full stated principal balance of the mortgage loan

9   through to the Certificate Holders after Fannie Mae's and Freddie Mac's purchase of the REO

10   property from the MBS Trust.

11   34.   Thus, in cases of both short sales and foreclosures, the following options are exercised by

12   Fannie Mae and Freddie Mac:

13       a.   Fannie Mae and Freddie Mac will purchase a defaulted loan from an MBS

14       Trust for 100% of the principal amount of the loan and then proceed to either

15       a short sale or to foreclose on the secured property;

16       b.   In the case of a short sale of a property secured by a loan owned by an MBS

17       Trust, pay to the MBS Trust the proceeds from the short sale plus any

18       deficiency such that the MBS Trust receives 100% of the principal amount of

19       the loan; or

20       c.   In the case of a foreclosure of an MBS Trust property, purchase the REO

21       property from the MBS Trust and pay to the MBS Trust 100% of the principal

22       amount of the loan.

23   35.   In each of the above instances, and in cases where Fannie Mae and Freddie Mac own an MBS

24   mortgage pool in their own portfolio, it is Fannie Mae and Freddie Mac that will have caused

25   to have paid all shortages on all distressed properties such that the MBS Trusts are guaranteed

26   to receive 100% of the principal amount of all loans within the MBS Trust.

27

28

**D.**     **The Mortgage Selling and Servicing Contract and the Representations, Warranties and Certifications of Defendants**

36.     Although Fannie Mae and Freddie Mac are the master servicers of their own loans and of the MBSs, Fannie Mae and Freddie Mac contract with Defendants to both purchase loans from Defendants, and/or to permit Defendants to perform direct loan servicing functions on behalf of Fannie Mae and Freddie Mac and the MBSs.

37.     The mortgage selling and servicing contract establishes the basic legal relationship between Defendants and Fannie Mae and Freddie Mac.

38.     Specifically, it:

- establishes the Defendants as approved sellers of mortgages and provides the general terms and conditions of those sales;

- establishes the Defendants as approved servicers of the mortgages and provides the general terms and conditions for servicing;

- incorporates by reference the terms of various selling guides, servicing guides, (including any announcements, lender letters, release notes, notices, and information posted on Fannie Mae's and Freddie Mac's website that is incorporated by reference) (all of which is collectively referred to herein as **"Mortgage Selling and Servicing Contracts"** or **"MSSC(s)"**).

39.     The continuation of that contractual relationship is contingent upon the parties honoring the mutual promises in MSSCs.

40.     Pursuant to the terms and conditions of the MSSCs, Defendants, and each of them, represent, warrant and certify to Plaintiff that the mortgage loans that they sell to Fannie Mae and Freddie Mac and/or service for Fannie Mae and Freddie Mac comply with all requirements of the MSSCs and applicable law, and that Defendants' servicing practices comply with requirements set forth in the MSSCs and with applicable law.

41.     Further, if a particular unit of residential property which is secured by a mortgage loan serviced by Defendants and sold to or assigned to Fannie Mae, Freddie Mac or an MBS (**"Subject**

**Unit(s)")** is located within a condominium or planned unit development project located in a jurisdiction that has enacted the Uniform Condominium Act (UCA), the Uniform Common Interest Ownership Act (UCIOA), or other similar statutes (**"Homeowners' Associations"** or **"HOAS"**), the payment of monthly, quarterly or annual assessments (**"HOA Assessments"**) to the HOAS is required pursuant to the HOAS' covenants, conditions and restrictions (**"CCRS"**).

42.   Pursuant to the terms and conditions of the MSSCs, Defendants, and each of them, expressly represent, warrant and certify to Plaintiff the following:

a.   When the mortgage borrower fails to pay the monthly HOA Assessments, Defendants shall advance their own funds to pay them;

b.   When Fannie Mae, Freddie Mac or the MBS obtains title to a Subject Unit within an HOA through foreclosure, they will not be liable for more than six months of the Subject Unit's unpaid, regularly budgeted HOA Assessments which accrued before acquisition of the Subject Unit by Plaintiff (**"Excessive HOA Assessments"**) and that Defendants shall be liable for and advance all such Excessive HOA Assessments;

c.   When the HOA's assessment lien priority includes costs of collecting unpaid HOA Assessments, the Defendants will be liable for any such costs of collecting;

d.   Defendants shall be liable for, and pay all costs of collection, interest, penalties, attorney's fees and late fees relating to the Subject Unit (**"Related Costs"**) and Plaintiff shall not pay, nor be liable for such Related Costs;

e.   That after Plaintiff's acquisition of the Subject Unit (and prior to the transfer of the Subject Unit to a third party,) that all HOA Assessments, Excessive HOA Assessments and Related Costs on the Subject Unit are current;

f.   That Defendants will indemnify and hold Fannie Mae and Freddie Mac (including its successors and assigns) harmless against all losses, damages, claims, fees and costs that are based on, or result from, Defendants' breach or alleged breach of its warranties or representations or its origination or selling and servicing activities related to mortgage

1   loans that Defendants sell to or service for Plaintiff;

2   g.   That Defendants will comply with all existing laws and CC&RS relevant to the Subject

3        Units; and

4   h.   When submitting reimbursement requests for Servicing Advances (defined below) and

5        other costs, not to request reimbursement of amounts which exceed Fannie Mae's and

6        Freddie Mac's approved expense limits ((a) through (h) collectively referred to as the

7        **"Certifications"**).

8   43.  Duties to be performed by the Defendants and required under the MSSCs include general loan

9        servicing responsibilities, collection and remittance of payments on the mortgage loans,

10       administration of mortgage escrow accounts, collection of insurance claims, paying Servicing

11       Advances, foreclosing on defaulted mortgages, if necessary, and verifying and certifying that

12       when submitting reimbursement requests for Servicing Advances (defined below) and other

13       amounts as noted above, the Defendants do not exceed Fannie Mae's and Freddie Mac's

14       approved expense limits.

15  **E.   The Payment of Servicing Advances**

16  44.  **"Servicing Advances"** are those amounts of money paid (or required to be paid) by the

17       Defendants (as loan servicers) pursuant to the MSSCs to maintain a Subject Unit.

18  45.  Servicing Advances include payments of taxes, assessments by special assessment districts,

19       mortgage insurance premiums, hazard (or property), flood, earthquake or other insurance

20       premiums, property repairs, and most notably and pertinent to this action, condominium,

21       planned unit development or homeowners' association assessments (i.e., HOA Assessments).

22  46.  Pursuant to the MSSCs, Defendants, as seller/services of the mortgage loans, are "prohibited

23       from engaging in business practices that have the apparent intent of avoiding Seller/Servicers'

24       obligations," such as avoiding the payment of Servicing Advances.

25  47.  In the case of a foreclosure of a Subject Unit, and pursuant to the MSSCs, the Defendants are

26       entitled to reimbursement of Servicing Advances paid by them from proceeds received from

27       the sale to a third party of the Subject Unit.

28

48.   However, for delinquent HOA Assessments having accrued prior to the acquisition of the mortgaged property by Plaintiff at foreclosure, (and in states which permit an HOA to have a priority lien over the first mortgage lender,) the Defendants are only permitted a reimbursement by Fannie Mae and Freddie Mac of up to a maximum of six months of regular, common HOA Assessments.

49.   Even though more than six months of delinquent HOA Assessments (i.e., the Excessive HOA Assessments) may have accrued prior to Plaintiff's acquisition of the Subject Unit at foreclosure, under the MSSCs, Plaintiff is only liable for 6 months of HOA Assessments and Defendants are liable for the rest.

**F.    Defendants Present Knowingly False Claims and Make False Certifications to Plaintiff**

50.   In each instance relevant hereto, after the foreclosure of a Subject Unit wherein Plaintiff or an MBS takes title, an HOA or its collection agent or law firm cause to have a demand made for delinquent HOA Assessments in an amount greater than a figure equaling six months of assessments for the time period prior to Plaintiff's acquisition of title at a foreclosure auction (i.e., the Excessive HOA Assessments).

51.   Moreover, the HOA or its collection agent or law firm cause to have a demand made for fines, fees, interest, penalties and/or collection costs related to the Subject Unit (i.e., the Related Costs).

52.   Even though pursuant to the MSSCs, Fannie Mae and Freddie Mac are not liable for paying the Related Costs or the Excessive HOA Assessments (this being the responsibility of the Defendants,) the Defendants routinely and intentionally avoid paying such amounts and cause Fannie Mae and Freddie Mac to pay the Related Costs and Excessive HOA Assessments.

53.   Defendant do this by making false certifications and submitting false claims to Plaintiff as described below.

54.   Defendants have actual knowledge of the Excessive HOA Assessments and Related Costs because (a) notices of delinquencies are transmitted to Defendants by the HOAs and their agents; (b) notices of delinquent liens are recorded against the Subject Units; and (c)

Defendants are, as a first mortgagee or loan servicer, notified as a matter of law by the HOAS and their agents of the Excessive HOA Assessments and Related Costs.

55.    In addition, Defendants have actual knowledge that it is Defendants, and not the Plaintiff who are obligated to pay such Excessive HOA Assessments and Related Costs because such obligations are specifically contained in the MSSCs which are agreed to by Defendants.

56.    Moreover, after a mortgage loan default occurs, Defendants, who certify that they will keep all HOA Assessment payments current, fail to do so resulting in the accrual of even more delinquent HOA Assessments and Related Costs.

57.    With actual notice of the Excessive HOA Assessments, Related Costs and other HOA Assessment delinquencies, Defendants, then, systematically proceed to assign the defaulted mortgage loans to Fannie Mae or Freddie Mac, in each case falsely certifying that Defendants have complied with the MSSCs and all Certifications, when indisputably in every case they have not.

58.    Defendants falsely certify they have met the Certifications in order that Plaintiff will purchase and/or accept assignment of the mortgage loans, continue to permit Defendants to service the Subject Units' mortgage loans and continue to pay Defendants loan servicing fees thereby.

59.    Among the many criteria that Defendants must certify that have been satisfied in order to present and assign to Fannie Mae and Freddie Mac the defaulted mortgage loans, and to continue to service said loans and be compensated thereby, is that all HOA Assessments that could become a superior lien to the first mortgage are current.

60.    However, at the time of the assignment, all such HOA Assessments are not current.

61.    Further, at the time of presentment to and assignment of the defaulted mortgage loans to Fannie Mae and Freddie Mac, Defendants falsely certify that all of the Certifications have been met.

62.    However, as described herein, at the time of the assignment, all of the Certifications have not been met.

63.    For example, in most instances Defendants fail to pay for and assume liability for the Excessive HOA Assessments and Related Costs, but pass those expenses onto Plaintiff such

1    that Plaintiff pays for them.

2    64.    Further, at the time of presentment to and assignment of the defaulted mortgage loans to

3    Plaintiff, Defendants falsely certify that they have contacted the management company of each

4    property in an HOA to ensure that all future bills for all HOA Assessments are sent to them

5    and that they are paying the bills as they come due.

6    65.    However, both before and after the assignments of the defaulted mortgage loans to Plaintiff,

7    and both before and after acquisition by Fannie Mae and Freddie Mac of the Subject

8    Properties, the Defendants knowingly fail and refuse to pay the HOA Assessments, Excessive

9    HOA Assessments and Related Costs.

10   66.    Instead, the Defendants wait until the foreclosed properties are sold to third party buyers.

11   67.    Then, from the escrow office in the city where the Subject Unit is located, and during the

12   escrow period for the sale of the Subject Unit from Plaintiff to the third party buyer, instead

13   of the Defendants paying all such HOA Assessments, Excessive HOA Assessments and

14   Related Costs as they are obligated to do under the MSSCs, the Defendants will use, cause to

15   be used, and present to Plaintiff an escrow demand which falsely demands an amount of money

16   which is in excess of what Plaintiff is obligated to pay under the MSSCs, local law or the

17   HOA's CC&RS **("False Demand(s)")**.

18   68.    Defendants cause to have the False Demands submitted to Plaintiff for the purpose of getting

19   Plaintiff to pay them, so that Defendants will not have to.

20   69.    Further, from the escrow office in the city where the Subject Unit is located, and during the

21   escrow period for the sale of the Subject Unit from Plaintiff to the third party buyer, the

22   Defendants will use, cause to be used, and present to Plaintiff an escrow closing settlement

23   statement which falsely indicates that it is Fannie Mae and Freddie Mac who must pay all such

24   HOA Assessments, Excessive HOA Assessments and Related Costs from their sale proceeds

25   **("False Settlement Statement(s)")**.

26   70.    Defendants cause to have the False Settlement Statements submitted to Plaintiff for the

27   purpose of getting Plaintiff to pay the HOA Assessments, Excessive HOA Assessments and

1      Related Costs, so that Defendants will not have to.

2  71.   In doing so, the Defendants, at the time of escrow closing and at the time of the submitting of

3        the False Demands and False Settlement Statements for payment to or approval by Plaintiff,

4        knowingly and intentionally avoid having to pay the Excessive HOA Assessments and Related

5        Costs and knowingly and intentionally cause Fannie Mae and Freddie Mac to pay such

6        amounts.

7  72.   At a minimum, in their causing to use and submit the False Demands and False Settlement

8        Statements to Plaintiff, Defendants act in reckless disregard of the truth or falsity of the False

9        Demands and False Settlement Statements as it is Defendants who are charged with paying all

10       such amounts pursuant to the MSSCs.

11 73.   The False Demands and False Settlement Statements are false because they state an amount

12       of money for Excessive HOA Assessments and Related Costs which must be paid by Plaintiff,

13       when such amounts of money do not have to be paid by Plaintiff pursuant to the MSSCs, local

14       law or the HOA's CC&RS.

15 74.   By knowingly using or causing to be used a false entry in the False Demands and False

16       Settlement Statements for Excessive HOA Assessments and Related Costs, Defendants

17       conceal, avoid, or decrease an obligation which they are contractually obligated to pay, and

18       instead, cause Fannie Mae and Freddie Mac to pay such obligation through escrow.

19 75.   Defendants' actions as described herein decrease the proceeds Plaintiff receives from the sale

20       of the Subject Unit thereby economically harming Plaintiff.

21 76.   Each time Defendants cause the presentment to Plaintiff of the False Demands and False

22       Settlement Statements for payment or approval by the Plaintiff, Defendants certify that they

23       have complied with the Certifications, when in fact, they have not.

24 77.   Defendants' causing of the presentment of the False Demands and False Settlement Statements

25       is material as Plaintiff cannot clear title or sell the Subject Unit with free and clear title without

26       paying the false amounts demanded.

27 78.   In each case relevant hereto, Plaintiff relies upon said false certifications, False Demands and

28

1   False Settlement Statements, and pays the excessive amounts demanded so that it can clear title
2   and sell the Subject Unit.

3   **G.      Representative Examples**

4   79.     The above described fraudulent scheme has been perpetrated by Defendants upon Plaintiff
5           thousands of times throughout jurisdictions in the United States which have enacted the
6           Uniform Condominium Act (UCA), the Uniform Common Interest Ownership Act (UCIOA),
7           or other similar statutes.

8   80.     In each case Defendants will use or cause to present to Plaintiff False Demands and False
9           Settlement Statements which demand Plaintiff pay amounts of money that are not owed by
10          Plaintiff pursuant to the MSSCs, local laws or the HOA's CC&RS.

11  81.     Plaintiff is economically damaged in each case because it pays money it does not actually owe.

12  82.     Defendants knowingly use or cause to be presented to Plaintiff these false claims for the
13          purpose of getting Plaintiff to pay for the excessive amounts so that Defendants do not have
14          to.

15  83.     Further, in each case Defendants will use or cause to present to Plaintiff assignments of the
16          Subject Units' mortgages loans thereby falsely certifying that the Defendants have met the
17          Certifications when, in fact, they have not.

18  84.     Defendants falsely certify they have met the Certifications in order that Plaintiff will purchase
19          or accept assignment of the mortgage loans, continue to permit Defendants to service the
20          Subject Units' mortgage loans and continue to pay Defendants loan servicing fees thereby.

21  85.     Plaintiff is economically damaged by the false certifications as it has purchased a defaulted
22          loan which is not in conformance with the MSSCs and does not yield sufficient capital to cover
23          the purchase price of the loan or to cover Plaintiff's guarantee to the MBS Trusts to make full
24          and final payment of the total unpaid principal balance of the MBS certificates.

25  86.     Plaintiff is further damaged by the false certifications as it continues to pay loan servicing fees
26          to Defendants when Defendants have failed to meet their obligations under the MSSCs.

27  87.     Attached hereto as Exhibit 1 are representative examples of the false claims described herein

28

1   which provide the address of the Subject Unit, the Assessor's Parcel Number, the approximate

2   date of the assignment, the approximate date of the False Demand, the approximate date of the

3   False Settlement Statement, and the names of the Defendants making each such false claim.

4   88.   Exhibit 1 merely provides representative examples of the vast and far reaching fraud

5   perpetrated upon Plaintiff by Defendants as described herein.

6   **H.   The False Reimbursement Claim Forms**

7   89.   Pursuant to the MSSCs, the Excessive HOA Assessments and Related Costs are not

8   reimbursable as Servicing Advances to Defendants by Plaintiff.

9   90.   However, in another scheme, if the Defendants do pay the Excessive HOA Assessments and

10   Related Costs to the HOAS during the time they are servicing the loans, the Defendants will

11   then file Servicing Advance reimbursement claims forms for the Excessive HOA Assessments

12   and Related Costs with Fannie Mae (on Form 571) and Freddie Mac (on Form 104SF) and

13   falsely represent and certify that such amounts are within Fannie Mae's  and Freddie Mac's

14   approved expense limits, when they are not.

15   91.   On the reimbursement claim forms, the Defendants will "re-categorize" the Excessive HOA

16   Assessments and Related Costs which are not reimbursable expenses pursuant to the MSSCs,

17   into expense categories which are reimbursable pursuant to the MSSCs.

18   92.   By "re-categorizing" these non-reimbursable expenses into reimbursable expenses on the

19   reimbursement claim forms, the Defendants deceive Plaintiff into paying money to Defendants

20   that is not otherwise owed under the MSSCs.

21   93.   For example, regarding a Subject Unit located at 5173 Estasi St., Las Vegas, NV, wherein

22   Defendant Wells Fargo Bank, NA., assigned the trust deed to Freddie Mac and serviced the

23   loan and wherein Freddie Mac foreclosed and took title on February 16, 2010, a collection

24   agency made demand for $9,933.08 on March 8, 2010.

25   94.   Much of the demand was for Excessive HOA Assessments and Related Costs which are non-

26   reimbursable expenses for which Defendant Wells Fargo Bank, NA., is liable.

27   95.   In April of 2010, Defendant Wells Fargo Bank, NA., re-categorized the Excessive HOA

28

Assessments and Related Costs into categories called, "Misc Foreclosure or Bankruptcy Expenses," and "Statutory Expenses" such that the expenses conformed to the MSSCs' reimbursable classifications when, in fact, the expenses were non-reimbursable.

96.    Similarly, regarding a Subject Unit located at 7852 Carysford Ave., Las Vegas, NV, wherein Defendant Wells Fargo Bank, NA., assigned the trust deed to Freddie Mac and serviced the loan and wherein Freddie Mac foreclosed and took title on June 10, 2010, a collection agency made demand for $1,768.99 on July 2, 2010.

97.    Much of the demand was for Excessive HOA Assessments and Related Costs which are non-reimbursable expenses for which Defendant Wells Fargo Bank, NA., are liable.

98.    In July of 2010, Defendant Wells Fargo Bank, NA., re-categorized the Excessive HOA Assessments and Related Costs into categories called, "Misc Foreclosure or Bankruptcy Expenses," and "Statutory Expenses" such that the expenses conformed to the MSSCs' reimbursable classifications when, in fact, the expenses were non-reimbursable.

99.    Similarly, regarding a Subject Unit located at 9237 January Dr., Las Vegas, NV, wherein Defendant Wells Fargo Bank, NA., assigned the trust deed to Freddie Mac and serviced the loan and wherein Freddie Mac foreclosed and took title on April 9, 2010, a collection agency made demand for $5,576.78 on May 18, 2010.

100.   Much of the demand was for Excessive HOA Assessments and Related Costs which are non-reimbursable expenses for which Defendant Wells Fargo Bank, NA., are liable.

101.   In June of 2010, Defendant Wells Fargo Bank, NA., re-categorized the Excessive HOA Assessments and Related Costs into categories called, "Misc Foreclosure or Bankruptcy Expenses," and "Statutory Expenses" such that the expenses conformed to the MSSCs' reimbursable classifications when, in fact, the expenses were non-reimbursable.

102.   For Excessive HOA Assessments and Related Costs which were paid by Defendants up to the date of Plaintiff's foreclosure or acquisition of the Subject Unit, Defendants requested false reimbursement within 45 calendar days of the Plaintiff's acquisition date or foreclosure sale date.

103.   For Excessive HOA Assessments and Related Costs incurred after the foreclosure or acquisition date of the Subject Unit by Plaintiff, Defendants requested false reimbursement within 60 calendar days after the settlement of the sale of the Subject Unit to a third party.

104.   In each such case, by "re-categorizing" these non-reimbursable expenses into reimbursable expenses on the reimbursement claim forms, Defendants caused Plaintiff to pay money to them which Plaintiff did not owe.

**COUNT I: VIOLATIONS OF 31 U.S.C. § 3729**

**(False Claims of the Defendants)**

105.   Relators incorporate each and every paragraph of this complaint as though fully set forth herein.

106.   Pursuant to 31 U.S.C.A. § 3729, Relators seek a recovery on behalf of the United States, for all false claims submitted by the Defendants to Fannie Mae and Freddie Mac (as principals and as master servicer and guarantor of the mortgage loans of the MBS Trusts,) on a national basis and seek as compensatory damages all amounts that the Defendants avoided, failed to pay, or caused Fannie Mae and Freddie Mac to pay for the Excessive HOA Assessments and the Related Costs.

107.   Further, whereas the Defendants certified that all mortgage loans they assigned to and/or serviced for Fannie Mae and Freddie Mac (as principals and as master servicer and guarantor of the mortgage loans of the MBS Trusts,) met all Certifications contained in the MSSCs, but such certifications were false, Relators seek a recovery on behalf of the United States for all damages incurred by Fannie Mae and Freddie Mac resulting from all such false certifications on a national basis.

108.   The Defendants falsely certified to Fannie Mae and Freddie Mac that such loans complied with the MSSCs, when, in fact, they did not. These false certifications resulted in Fannie Mae and Freddie Mac (and the MBSs) owning or guarantying defaulted mortgage loans which exceeded the value of the underlying Subject Unit. But for the false certifications that the mortgage loans assigned to Fannie Mae and Freddie Mac by the Defendants complied with the MSSCs and the

1   Certifications, Fannie Mae and Freddie Mac would not have acquired such loans and would

2   not have suffered losses connected with the default of such loans.  Further, Fannie Mae and

3   Freddie Mac would not have incurred loan servicing fees relating to said loans.  Therefore, all

4   such economic losses as a result of the Defendants' false certifications constitute damages for

5   which the Defendants are obligated to recompense Plaintiff.

6   109.   The Defendants knew that the claims, statements, representations, and certifications described

7   above were false within the meaning of 31 U.S.C. §3729(b), and caused the submission of the

8   false claims within the meaning of § (a)(l) and the making of false certifications within the

9   meaning of § (a)(2).

10  110.   The Defendants are liable in this action for civil penalties of not less than $5,000 and not more

11  than $10,000, plus three (3) times the amount of damages which the Plaintiff sustained because

12  of the acts as described herein.

13  WHEREFORE, the UNITED STATES of AMERICA on relation of JAMES R. ADAMS and

14  PUOY K. PREMSRIRUT respectfully demand judgement against Defendants awarding treble the

15  damages to the government, a penalty of $10,000 for each false claim, all attorneys fees and costs

16  incurred in pursuing this action and any and all other relief which the Court deems proper. Relators

17  further respectfully demands that the Court award them 30% of any recovery to the government in this

18  suit.

19  DATED this _____ day of January, 2013.

20

21                                                      LAW OFFICES OF SIGAL CHATTAH

22                                                      _____
                                                        SIGAL CHATTAH, ESQ.
23                                                      Nevada Bar No. 8264
                                                        5875 S. Rainbow Blvd., Suite 204
24                                                      Las Vegas, Nevada 89118
                                                        Tel: (702) 360-6200
25                                                       Fax: (702) 643-6292
                                                        chattahlaw@gmail.com
26                                                      *Attorney for Relators*

27

28