LAW OFFICES OF SIGAL CHATTAH
SIGAL CHATTAH, ESQ.
Nevada Bar No. 8264
5875 S. Rainbow Blvd., Suite 204
Las Vegas, Nevada 89118
Tel: (702) 360-6200
 Fax: (702) 643-6292
chattahlaw@gmail.com
*Attorney for Relators*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex. rel.*, <br><br> Plaintiff, <br><br> JAMES R. ADAMS and PUOY K. PREMSRIRUT, <br><br> Relators, <br><br> vs. <br><br> AURORA LOAN SERVICES LLC; BAC HOME LOANS SERVICING LP; BANK OF AMERICA NA; CHASE HOME FINANCE LLC; CITIMORTGAGE INC; COUNTRYWIDE HOME LOANS SERVICING LP; COUNTRYWIDE HOME LOANS INC.; EMC MORTGAGE CORPORATION; GMAC MORTGAGE CORPORATION; JPMORGAN CHASE BANK NA;  NATIONSTAR MORTGAGE LLC; OCWEN LOAN SERVICING LLC; ONEWEST BANK FSB; PHH MORTGAGE CORP; US BANK NA; WELLS FARGO BANK NA; DOES 1 through 500; and ROE ENTITIES 1 through 500, inclusive. <br><br> Defendants | Case No.:  2:11-cv-00535-RCJ-NJK <br><br><br> **SECOND AMENDED COMPLAINT** |

The United States of America, by and through qui tam relators Puoy K. Premsrirut and James R. Adams ("Relators"), brings this action under 31 U.S.C § 3729, et seq., as amended (False Claims Act) to recover all damages, penalties and other remedies established by the False Claims Act on behalf of the United States.

**JURISDICTION & VENUE**

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and 31 U.S.C. § 3730, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 (the **"False Claims Act"**).

2.    This action is not based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or General Accounting Office report, hearing, audit, or investigation, or from the news media. Morever, Relators have direct and independent knowledge of the information on which the allegations of fraud and false claims are herein based and they have voluntarily investigated, researched, developed the information and have provided the information to the Plaintiff.  Thus, there have been no public disclosures of the allegations or transactions contained herein that bar jurisdiction under 31 U.S.C. § 3730(e).

3.    This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because multiple Defendants can be found, reside and transact business in the State of Nevada and the acts engaged in by multiple Defendants, which are proscribed by 31 U.S.C. § 3729, occurred in the State of Nevada and other states and territories of the United States.

4.    Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated in the State of Nevada and one or more of the Defendants may be found in the State of Nevada. In addition, for purposes of venue, Defendants are corporations and, as such, are deemed to reside in this judicial district because they are subject to personal jurisdiction in the State of Nevada.

**THE PARTIES**

5.    Relators James R. Adams and Puoy K. Premsrirut have discovered and have actively investigated a years long and expansive scheme by Defendants to defraud the United States government **("Plaintiff")** which includes the Federal National Mortgage Association (**"Fannie Mae"**) and the Federal Home Loan Mortgage Corporation (**"Freddie Mac"**).

6.   Relators are the original source of the information described herein as they have independently uncovered and voluntarily disclosed to the Government the information on which allegations or transactions in this action are based, or have knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, if any, and have voluntarily provided the information to the Government before the filing of this action.

7.   Defendants transact business in the State of Nevada and in other states and territories of the United States and have contracted with Plaintiff to sell to Plaintiff and/or service for Plaintiff mortgage loans.

8.   The true names and capacities, whether individual, corporate, or otherwise, of Defendants herein designated as DOES 1 through 500 and ROE ENTITIES 1 through 500 inclusive, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each of said Defendants are responsible in some manner for the events and happenings alleged herein and proximately caused the injuries and damages herein alleged.   Plaintiff will seek leave to amend this Complaint to allege their true names and capacities as they are ascertained.

### FACTUAL ALLEGATIONS

### I

**A.    Fannie Mae and Freddie Mac and FHFA Conservatorship**

9.   Fannie Mae was founded in 1938 for the purpose to expand the secondary mortgage market by purchasing mortgage loans from participating lenders and securitizing the mortgages in the form of mortgage-backed securities.  This allows mortgage lenders to reinvest their assets into more lending.

10.   Freddie Mac was created in 1970 to expand the secondary market for mortgages in the United States.

11.   In 2008, Fannie Mae and Freddie Mac had purchased about 80% of all new home mortgages in the United States. Their combined investment portfolios held mortgage assets (loans and mortgage backed securities) valued at $1.5 trillion (as of June 30, 2008).

12.   The Housing and Economic Recovery Act of 2008, enacted July 30, 2008, provided the authority for the United States government's takeover of Fannie Mae and Freddie Mac.

13.   The act created a new regulator, the Federal Housing Finance Agency (**"FHFA"**), with the authority to take control of either Fannie Mae and Freddie Mac to restore them to sound financial conditions.

14.   FHFA is a federal agency of the United States Government.

15.   Fannie Mae and Freddie Mac have been under FHFA conservatorship since September 6, 2008.

16.   As conservator, FHFA succeeded to all rights, titles, powers and privileges of Fannie Mae and Freddie Mac and of any shareholder, officer or director of the Fannie Mae and Freddie Mac with respect to the Fannie Mae and Freddie Mac and their assets.

**B.   Mortgage Backed Securities**

17.   Both Fannie Mae and Freddie Mac buy home mortgages from the originating lenders or assignees of the originating lenders (**"Selling Lenders"**) and  repackage them into mortgage pools known as mortgage-backed securities (**"MBS(s)"**).

18.   After purchase of the mortgage loans from the Selling Lenders, Fannie Mae and Freddie Mac will either (a) sell the MBSs, or (b) hold them in their own investment portfolios.

19.   The Fannie Mae and Freddie Mac MBSs that are sold to investors (**"Certificate Holders"**) are sold via certificates with each certificate representing a *pro rata* undivided beneficial ownership interest in the MBS.

20.   Fannie Mae and Freddie Mac holds the MBSs in a trust on behalf of the Certificate Holders (the **"MBS Trusts"**).

21.   As a Fannie Mae or Freddie Mac MBS investor, each Certificate Holder is entitled to and receives a *pro rata* share of the scheduled principal and interest from mortgagors on the loans backing the MBS.

22.   Interest is paid to the Certificate Holder at a specific interest rate and the Certificate Holder also receives any unscheduled payments of principal.

23.   Fannie Mae and Freddie Mac guarantee to the MBS Trusts that on each distribution date Fannie Mae and Freddie Mac will supplement amounts received by the MBS Trusts as required to permit payments on the certificates in an amount equal to the aggregate amounts of scheduled and unscheduled principal payments of the mortgage loans, and an amount equal to one month's interest on the certificates.

24.   In addition, Fannie Mae and Freddie Mac guarantee to the MBS Trusts that Fannie Mae and Freddie Mac will supplement amounts received by the MBS Trusts as required to make the full and final payment of the total unpaid principal balance of the certificates.

25.   Thus, Fannie Mae and Freddie Mac fully guaranty the payment to the MBS Trusts of all principal amounts of the underlying mortgage loans comprising the MBS.

**C.      Real Estate Owned Property- Short Sales and Foreclosures**

26.   In addition to their guaranty responsibilities, under the MBS Trust agreements, Fannie Mae and Freddie Mac are required in some instances (and have the option in other instances) to purchase a mortgage loan or real estate acquired as a result of a default (**"real estate owned property"** or **"REO property"**) from the MBS Trusts.

27.   After U.S. house sales prices peaked in mid-2006 and subsequently began their steep decline, adjustable-rate mortgages began to reset at higher interest rates and mortgage delinquencies and foreclosures soared.

28.   As a result, in recent years, many states have experienced significant increases in mortgage foreclosures.

29.   Depending on a particular troubled borrower's circumstances, as part of Fannie Mae's and Freddie Mac's loss mitigation efforts, Fannie Mae and Freddie Mac may accept a "short payoff" of the mortgage loan or foreclose on the mortgaged property.

30.   With a short payoff, the full principal amount of the loan becomes due, but Fannie Mae and Freddie Mac accepts less than the outstanding unpaid principal balance of the mortgage loan from sale or refinancing proceeds received by the borrower.

31.   In cases where Fannie Mae or Freddie Mac accepts a short payoff by the borrower, Fannie Mae

1   and Freddie Mac still pays the full stated principal balance of the mortgage loan through to the

2   Certificate Holders (even if the stated principal balance is more than the payoff proceeds

3   received by Fannie Mae and Freddie Mac).

4   32.   In non-short sale payoff cases where Fannie Mae and Freddie Mac cause the foreclosure of a

5   mortgaged property, the REO property typically is purchased by Fannie Mae and Freddie Mac

6   from the related MBS Trust within sixty (60) days after the date of that the foreclosure sale is

7   completed.

8   33.   Fannie Mae and Freddie Mac also pay the full stated principal balance of the mortgage loan

9   through to the Certificate Holders after Fannie Mae's and Freddie Mac's purchase of the REO

10   property from the MBS Trust.

11   34.   Thus, in cases of both short sales and foreclosures, the following options are exercised by

12   Fannie Mae and Freddie Mac:

13          a.   Fannie Mae and Freddie Mac will purchase a defaulted loan from an MBS

14               Trust for 100% of the principal amount of the loan and then proceed to either

15               a short sale or to foreclose on the secured property;

16          b.   In the case of a short sale of a property secured by a loan owned by an MBS

17               Trust, pay to the MBS Trust the proceeds from the short sale plus any

18               deficiency such that the MBS Trust receives 100% of the principal amount of

19               the loan; or

20          c.   In the case of a foreclosure of an MBS Trust property, purchase the REO

21               property from the MBS Trust and pay to the MBS Trust 100% of the principal

22               amount of the loan.

23   35.   In each of the above instances, and in cases where Fannie Mae and Freddie Mac own an MBS

24   mortgage pool in their own portfolio, it is Fannie Mae and Freddie Mac that will have caused

25   to have paid all shortages on all distressed properties such that the MBS Trusts are guaranteed

26   to receive 100% of the principal amount of all loans within the MBS Trust.

27

28

**D.**     **The Mortgage Selling and Servicing Contract and the Representations, Warranties and Certifications of Defendants**

36.     Although Fannie Mae and Freddie Mac are the master servicers of their own loans and of the MBSs, Fannie Mae and Freddie Mac contract with Defendants to both purchase loans from Defendants, and/or to permit Defendants to perform direct loan servicing functions on behalf of Fannie Mae and Freddie Mac and the MBSs.

37.     The mortgage selling and servicing contract establishes the basic legal relationship between Defendants and Fannie Mae and Freddie Mac.

38.     Specifically, it:

- establishes the Defendants as approved sellers of mortgages and provides the general terms and conditions of those sales;

- establishes the Defendants as approved servicers of the mortgages and provides the general terms and conditions for servicing;

- incorporates by reference the terms of various selling guides, servicing guides, (including any announcements, lender letters, release notes, notices, and information posted on Fannie Mae's and Freddie Mac's website that is incorporated by reference) (all of which is collectively referred to herein as **"Mortgage Selling and Servicing Contracts"** or **"MSSC(s)"**).

39.     The continuation of that contractual relationship is contingent upon the parties honoring the mutual promises in MSSCs.

40.     Pursuant to the terms and conditions of the MSSCs, Defendants, and each of them, represent, warrant and certify to Plaintiff that the mortgage loans that they sell to Fannie Mae and Freddie Mac and/or service for Fannie Mae and Freddie Mac comply with all requirements of the MSSCs and applicable law, and that Defendants' servicing practices comply with requirements set forth in the MSSCs and with applicable law.

41.     Further, if a particular unit of residential property which is secured by a mortgage loan serviced by Defendants and sold to or assigned to Fannie Mae, Freddie Mac or an MBS (**"Subject**

Unit(s)") is located within a condominium or planned unit development project located in a jurisdiction that has enacted the Uniform Condominium Act (UCA), the Uniform Common Interest Ownership Act (UCIOA), or other similar statutes ("**Homeowners' Associations**" or "**HOAS**"), the payment of monthly, quarterly or annual assessments ("**HOA Assessments**") to the HOAS is required pursuant to the HOAS' covenants, conditions and restrictions ("**CCRS**").

42.     Pursuant to the terms and conditions of the MSSCs, Defendants, and each of them, expressly represent, warrant and certify to Plaintiff the following:

a.     When the mortgage borrower fails to pay the monthly HOA Assessments, Defendants shall advance their own funds to pay them;

b.     When Fannie Mae, Freddie Mac or the MBS obtains title to a Subject Unit within an HOA through foreclosure, they will not be liable for more than six months of the Subject Unit's unpaid, regularly budgeted HOA Assessments which accrued before acquisition of the Subject Unit by Plaintiff (amounts over 6 months hereafter referred to as "**Excessive HOA Assessments**") and that Defendants shall be liable for and advance all such Excessive HOA Assessments;

c.     When the HOA's assessment lien priority includes costs of collecting unpaid HOA Assessments, the Defendants will be liable for any such costs of collecting;

d.     Defendants shall be liable for, and pay all costs of collection, interest, penalties, attorney's fees and late fees relating to the Subject Unit ("**Related Costs**") and Plaintiff shall not pay, nor be liable for such Related Costs;

e.     That after Plaintiff's acquisition of the Subject Unit (and prior to the transfer of the Subject Unit to a third party,) that all HOA Assessments, Excessive HOA Assessments and Related Costs on the Subject Unit are current;

f.     That Defendants will indemnify and hold Fannie Mae and Freddie Mac (including its successors and assigns) harmless against all losses, damages, claims, fees and costs that are based on, or result from, Defendants' breach or alleged breach of its warranties or

1      representations or its origination or selling and servicing activities related to mortgage

2      loans that Defendants sell to or service for Plaintiff;

3      g.      That Defendants will comply with all existing laws and CC&RS relevant to the Subject

4              Units and that Defendants have not avoided paying amounts to which they are

5              obligated under the MSSC's; and

6      h.      When submitting reimbursement requests for Servicing Advances (defined below) and

7              other costs, not to request reimbursement of amounts which exceed Fannie Mae's and

8              Freddie Mac's approved expense limits ((a) through (h) collectively referred to as the

9              **"Certifications"**).

10     43.    In addition, duties to be performed by the Defendants and required under the MSSCs include

11            general loan servicing responsibilities, collection and remittance of payments on the mortgage

12            loans, administration of mortgage escrow accounts, collection of insurance claims, paying

13            Servicing Advances, foreclosing on defaulted mortgages, if necessary, and verifying and

14            certifying that when submitting reimbursement requests for Servicing Advances (defined

15            below) and other amounts as noted above, the Defendants do not exceed Fannie Mae's and

16            Freddie Mac's approved expense limits.

17     **E.     The Payment of Servicing Advances**

18     44.    **"Servicing Advances"** are those amounts of money paid (or required to be paid) by the

19            Defendants (as loan servicers) pursuant to the MSSCs to maintain a Subject Unit.

20     45.    Servicing Advances include payments of taxes, assessments by special assessment districts,

21            mortgage insurance premiums, hazard (or property), flood, earthquake or other insurance

22            premiums, property repairs, and most notably and pertinent to this action, condominium,

23            planned unit development or homeowners' association assessments (i.e., HOA Assessments).

24     46.    Pursuant to the MSSCs, Defendants, as seller/services of the mortgage loans, are "prohibited

25            from engaging in business practices that have the apparent intent of avoiding Seller/Servicers'

26            obligations," such as avoiding the payment of Servicing Advances and other amounts described

27            below.

28

47.     In the case of a foreclosure of a Subject Unit, and pursuant to the MSSCs, the Defendants are entitled to reimbursement of Servicing Advances paid by them from proceeds received from the sale to a third party of the Subject Unit.

48.     However, for delinquent HOA Assessments having accrued prior to the acquisition of the mortgaged property by Plaintiff at foreclosure, (and in states which permit an HOA to have a priority lien over the first mortgage lender,) the Defendants are only permitted a reimbursement by Fannie Mae and Freddie Mac of up to a maximum of six months of regular, common HOA Assessments.

49.     Even though more than six months of delinquent HOA Assessments (i.e., the Excessive HOA Assessments) may have accrued prior to Plaintiff's acquisition of the Subject Unit at foreclosure, under the MSSCs, Plaintiff is only liable for 6 months of HOA Assessments and Defendants are liable for the rest.

**F.      Defendants Knowingly Violate the False Claims Act**

50.     Pursuant to the MSSCs, after acquisition of a Subject Unit by Plaintiff at a foreclosure auction, Defendants continue to be responsible for paying Servicing Advances, including any HOA Assessments, Excessive HOA Assessments and Related Costs.

51.     In each instance relevant hereto, after the foreclosure of a Subject Unit wherein Plaintiff or an MBS takes title, an HOA or its collection agent or law firm cause to have a demand made or lien filed for delinquent HOA Assessments in an amount greater than a figure equaling six months of assessments for the time period prior to Plaintiff's acquisition of title at a foreclosure auction (i.e., the Excessive HOA Assessments).

52.     Moreover, the HOA or its collection agent or law firm cause to have a demand made or lien filed for fines, fees, interest, penalties and/or collection costs related to the Subject Unit (i.e., the Related Costs).

53.     Even though Defendants have custody and control of the Subject Units, and even through pursuant to the MSSCs, Fannie Mae and Freddie Mac are not liable for paying the Related Costs or the Excessive HOA Assessments (this being the responsibility of the Defendants,) the

Defendants routinely and intentionally avoid paying such amounts and cause Fannie Mae and Freddie Mac to pay the Related Costs and Excessive HOA Assessments.

54.   Defendants have actual knowledge of the Excessive HOA Assessments and Related Costs because (a) demands and notices of delinquencies are transmitted to Defendants by the HOAs and their agents; (b) notices of delinquent liens are recorded against the Subject Units; and (c) Defendants are, as a first mortgagee or loan servicer, notified as a matter of law by the HOAS and their agents of the Excessive HOA Assessments and Related Costs.

55.   In addition, Defendants have actual knowledge that it is Defendants, and not the Plaintiff who are obligated to pay such Excessive HOA Assessments and Related Costs because such obligations are specifically contained in the MSSCs which are agreed to by Defendants.

56.   Moreover, after a mortgage loan default occurs, Defendants, who certify that they will keep all HOA Assessment payments current, fail to do so resulting in the accrual of even more delinquent HOA Assessments and Related Costs.

57.   After having actual notice of the Excessive HOA Assessments, Related Costs and other HOA Assessment delinquencies, Defendants, then, systematically proceed to assign the defaulted mortgages and trust deeds to Fannie Mae or Freddie Mac, in each case falsely certifying that Defendants have complied with the MSSCs and all Certifications, when indisputably in every case they have not.

58.   Defendants falsely certify they have met the Certifications in order that Plaintiff will accept assignment of the mortgages and trust deeds, continue to permit Defendants to service the Subject Units' mortgage loans and manage the Subject Units, and continue to pay Defendants servicing fees thereby.

59.   In addition, the Defendants file Servicing Advance reimbursement claims forms for reimbursement of Servicing Advances with Fannie Mae (on Form 571) and Freddie Mac (on Form 104SF).

60.   By filing the Servicing Advance reimbursement claims forms, Defendants falsely certify they have met the Certifications in order that Plaintiff pays Defendants money to reimbursement

1    them for funds which Defendants have advanced to maintain the Subject Units.

2    61.    Among the many criteria that Defendants must certify that have been satisfied in order to

3           present and assign to Fannie Mae and Freddie Mac the defaulted mortgages and trust deeds,

4           and to continue to service said loans, manage said Subject Units and be compensated loan

5           servicing fees thereby, and to file Servicing Advance reimbursement claim forms to receive

6           money from Plaintiff, is that all HOA Assessments that could become a superior lien to the

7           first mortgage are current.

8    62.    However, at the time of the assignment, the payment of the loan servicing fees, and the filing

9           and payment on the Servicing Advance reimbursement claim forms, all such HOA

10          Assessments are not current.

11   63.    Indeed, at such times, Defendants falsely certify that all of the Certifications have been met,

12          when they have not.

13   64.    For example, in most instances Defendants fail to pay for and assume liability for the

14          Excessive HOA Assessments and Related Costs, and pass those expenses onto Plaintiff such

15          that Plaintiff pays for them.

16   65.    Further, at the time of presentment to and assignment of the defaulted mortgages and trust

17          deeds, at the time of the payment to Defendants of the loan servicing fees, and at the time of

18          the filing of and payment on the Servicing Advance reimbursement claim forms, Defendants

19          falsely certify that they have contacted the management company of each Subject Unit in an

20          HOA to ensure that all future bills for all HOA Assessments are sent to them and that they are

21          paying the bills as they come due.

22   66.    However, at these times, the Defendants knowingly fail and refuse to pay the HOA

23          Assessments, Excessive HOA Assessments and Related Costs.

24   67.    Not only do Defendants falsely certify that the Certifications have been met so they can

25          continue receiving loan servicing fees and reimbursement of Servicing Advances, but they

26          falsely certify that the Certifications have been met because they know that the Excessive HOA

27          Assessments and Related Costs will ultimately have to be paid by Plaintiff in order to clear title

28

1   when the Subject Units are sold to third party buyers (because Defendant intentionally fail to

2   pay them).

3   68.   Because Defendants have failed to pay the HOA Assessments, Excessive HOA Assessments

4   and Related Costs, and because they have knowledge of the excessive demand amounts and

5   liens made by the HOAS and their agents, when Plaintiff sells the Subject Units to third party

6   buyers, Defendants know that the escrow office will cause to be made a settlement statement

7   requiring Plaintiff to pay such amounts to clear title.

8   69.   Therefore, from the escrow office which is handling the closing transaction for the sale of the

9   Subject Unit from Plaintiff to the third party buyer, and during the escrow period for the sale

10   of the Subject Unit, instead of the Defendants paying all such HOA Assessments, Excessive

11   HOA Assessments and Related Costs as they are obligated to do under the MSSCs, an HOA

12   payment demand is used which falsely demands an amount of money which is in excess of

13   what Plaintiff is obligated to pay under the MSSCs, local law or the HOA's CC&RS **("False**

14   **Demand(s)")**.

15   70.   Even though Defendants know the amounts demanded by the HOAS or their agents are

16   incorrect due to Defendants' failure to pay the Excessive HOA Amounts and Related Costs,

17   Defendants permit the False Demands to be used for the purpose of getting Plaintiff to pay the

18   Excessive HOA Assessments and Related Costs so that Defendants will not have to.

19   71.   Further, from the escrow office which is handling the closing transaction for the sale of the

20   Subject Unit from Plaintiff to the third party buyer, and during the escrow period for the sale

21   of the Subject Unit, an escrow closing settlement statement is used which falsely indicates that

22   it is Fannie Mae and Freddie Mac who must pay all such HOA Assessments, Excessive HOA

23   Assessments and Related Costs from their sale proceeds when, in fact, it is Defendants who

24   are liable to pay pursuant to the MSSCs **("False Settlement Statement(s)")**.

25   72.   Even though Defendants know the entry in the False Settlement Statement which indicates that

26   it is Plaintiff who must pay the Excessive HOA Assessments and Related Costs is incorrect,

27   Defendants permit the False Settlement Statements to be used for the purpose of getting

28

1    Plaintiff to pay the HOA Assessments, Excessive HOA Assessments and Related Costs, so that
2    Defendants will not have to.

3    73.   During the escrow period, the False Demands and False Settlement Statements are used and
4          presented to Plaintiff for payment from Plaintiff's settlement proceeds.

5    74.   The False Demands and False Settlement Statements are false because they state an amount
6          of money for Excessive HOA Assessments and Related Costs which must be paid by Plaintiff,
7          when such amounts of money do not have to be paid by Plaintiff pursuant to the MSSCs, local
8          law or the HOA's CC&RS.

9    75.   By knowingly failing to pay the Excessive HOA Assessments and Related Costs, Defendants
10         cause the False Demands and False Settlement Statements to be used so that Defendants can
11         conceal, avoid, or decrease an obligation which they are contractually obligated to pay, and
12         instead, cause Fannie Mae and Freddie Mac to pay such obligation through escrow.

13   76.   Defendants' actions as described herein decrease the proceeds Plaintiff receives from the sale
14         of the Subject Unit thereby economically harming Plaintiff.

15   77.   Each time Defendants cause the use of the False Demands and False Settlement Statements for
16         payment or approval by the Plaintiff, Defendants certify that they have complied with the
17         Certifications, when in fact, they have not.

18   78.   The use of the False Demands and False Settlement Statements is material as Plaintiff cannot
19         clear title or sell the Subject Unit with free and clear title without paying the false amounts
20         demanded.

21   79.   In each case relevant hereto, Plaintiff relies upon said false Certifications, False Demands and
22         False Settlement Statements, and pays the excessive amounts demanded so that it can clear title
23         and sell the Subject Unit.

24   80.   Plaintiff is further economically damaged by Defendants' above described actions because
25         Plaintiff will have purchased and been assigned a defaulted loan which is not in conformance
26         with the MSSCs and does not yield sufficient capital to cover the purchase price of the loan
27         or to cover Plaintiff's guarantee to the MBS Trusts to make full and final payment of the total
28

1    unpaid principal balance of the MBS certificates.

2  **G.    Representative Examples**

3  81.    The above described fraudulent scheme has been perpetrated by Defendants upon Plaintiff

4        thousands of times throughout jurisdictions in the United States which have enacted the

5        Uniform Condominium Act (UCA), the Uniform Common Interest Ownership Act (UCIOA),

6        or other similar statutes.

7  82.    For example, on or about 3/2/2011, Defendant BAC Home Loans Servicing, LP., ("Defendant

8        BAC") assigned a trust deed to Plaintiff for property located at 10707 Iona Island Ave., Las

9        Vegas, NV 89166 ("Iona Property"). At the time of the assignment, the time of the payment

10       of the loan servicing fees, and at the time of the presentment of and payment of the Servicing

11       Advance reimbursement claim forms, Defendant BAC had failed to comply with the

12       Certifications. It had not advanced its own funds to pay Excessive HOA Assessments or

13       Related Costs.  It failed to be liable for HOA Assessments and Related Costs which could

14       become a superior lien to the first trust deed/mortgage.   All HOA Assessments were not

15       current. It did not comply with the CC&RS and local law requiring the payment to the HOA

16       of HOA Assessments and Related Costs.

17 83.    As the borrower's note on the Iona Property was in default, after being assigned the trust deed,

18       Plaintiff foreclosed on the Iona Property on 3/14/2011.  A False Demand was then made upon

19       Plaintiff for $1,894.25 which included Excessive HOA Assessments and Related Costs which

20       Plaintiff was not required to pay.   The payment responsibility of the Excessive HOA

21       Assessments and Related Costs was that of Defendant BAC.  Further, at the time Plaintiff sold

22       the Iona Property, a False Settlement Statement was used which stated that it was Plaintiff who

23       was required to pay for the $1,894.25 when that responsibility was that of Defendant BAC.

24 84.    Defendant BAC failed to pay the Excessive HOA Assessments and Related Costs knowing that

25       a False Demand and False Settlement Statement would be used which indicated that it was

26       Plaintiff and not Defendant BAC who must pay the Excessive HOA Assessments and Related

27       Costs.  Defendant BAC did this to avoid having to pay for such costs itself.

28

85.  In another example, on or about 9/6/2010, Defendant Chase Home Finance, LLC ("Defendant Chase") assigned a trust deed to Plaintiff for property located at 2613 Lark Sparrow St., N. Las Vegas, NV 89084 ("Lark Sparrow Property"). At the time of the assignment, the time of the payment of the loan servicing fees, and at the time of the presentment of and payment of the Servicing Advance reimbursement claim forms, Defendant Chase had failed to comply with the Certifications. It had not advanced its own funds to pay Excessive HOA Assessments or Related Costs.  It failed to be liable for HOA Assessments and Related Costs which could become a superior lien to the first trust deed/mortgage. All HOA Assessments were not current. It did not comply with the CC&RS and local law requiring the payment to the HOA of HOA Assessments and Related Costs.

86.  As the borrower's note on the Lark Sparrow Property was in default, after being assigned the trust deed, Plaintiff foreclosed on the Lark Sparrow Property on 9/7/2010.  A False Demand was then made upon Plaintiff for $3,778.48 which included Excessive HOA Assessments and Related Costs which Plaintiff was not required to pay.  The payment responsibility of the Excessive HOA Assessments and Related Costs was that of Defendant Chase.  Further, at the time Plaintiff sold the Lark Sparrow Property, a False Settlement Statement was used which stated that it was Plaintiff who was required to pay for the $3,778.48 when that responsibility was that of Defendant Chase.

87.  Defendant Chase failed to pay the Excessive HOA Assessments and Related Costs knowing that a False Demand and False Settlement Statement would be used which indicated that it was Plaintiff and not Defendant Chase who must pay the Excessive HOA Assessments and Related Costs.  Defendant Chase did this to avoid having to pay for such costs itself.

88.  In another example, on or about 9/13/2010, Defendant Citimortgage, Inc., ("Defendant Citi") assigned a trust deed to Plaintiff for property located at 45 Meleena Mesa St., #923, Las Vegas, NV ("Meleena Property"). At the time of the assignment, the time of the payment of the loan servicing fees, and at the time of the presentment of and payment of the Servicing Advance reimbursement claim forms, Defendant Citi had failed to comply with the Certifications. It had

1  not advanced its own funds to pay Excessive HOA Assessments or Related Costs. It failed to

2  be liable for HOA Assessments and Related Costs which could become a superior lien to the

3  first trust deed/mortgage. All HOA Assessments were not current. It did not comply with the

4  CC&RS and local law requiring the payment to the HOA of HOA Assessments and Related

5  Costs.

6  89.  As the borrower's note on the Meleena Property was in default, after being assigned the trust

7  deed, Plaintiff foreclosed on the Meleena Property on 9/15/2010. A False Demand was then

8  made upon Plaintiff for $6,788.00 which included Excessive HOA Assessments and Related

9  Costs which Plaintiff was not required to pay. The payment responsibility of the Excessive

10  HOA Assessments and Related Costs was that of Defendant Citi. Further, at the time Plaintiff

11  sold the Meleena Property, a False Settlement Statement was used which stated that it was

12  Plaintiff who was required to pay for the $6,788.00 when that responsibility was that of

13  Defendant Citi.

14  90.  Defendant Citi failed to pay the Excessive HOA Assessments and Related Costs knowing that

15  a False Demand and False Settlement Statement would be used which indicated that it was

16  Plaintiff and not Defendant Citi who must pay the Excessive HOA Assessments and Related

17  Costs. Defendant Citi did this to avoid having to pay for such costs itself.

18  91.  In another example, on or about 1/29/2009, Defendant Wells Fargo Bank, NA, ("Defendant

19  Wells") assigned a trust deed to Plaintiff for property located at 195 Genesee Point St.,

20  Henderson, NV 89074 ("Genesee Property"). At the time of the assignment, the time of the

21  payment of the loan servicing fees, and at the time of the presentment of and payment of the

22  Servicing Advance reimbursement claim forms, Defendant Wells had failed to comply with

23  the Certifications. It had not advanced its own funds to pay Excessive HOA Assessments or

24  Related Costs. It failed to be liable for HOA Assessments and Related Costs which could

25  become a superior lien to the first trust deed/mortgage. All HOA Assessments were not

26  current. It did not comply with the CC&RS and local law requiring the payment to the HOA

27  of HOA Assessments and Related Costs.

28

92.   As the borrower's note on the Genesee Property was in default, after being assigned the trust deed, Plaintiff foreclosed on the Genesee Property on 2/3/2009.  A False Demand was then made upon Plaintiff for $2,072.50 which included Excessive HOA Assessments and Related Costs which Plaintiff was not required to pay.  The payment responsibility of the Excessive HOA Assessments and Related Costs was that of Defendant Wells.  Further, at the time Plaintiff sold the Genesee Property, a False Settlement Statement was used which stated that it was Plaintiff who was required to pay for the $2,072.50 when that responsibility was that of Defendant Wells.

93.   Defendant Wells failed to pay the Excessive HOA Assessments and Related Costs knowing that a False Demand and False Settlement Statement would be used which indicated that it was Plaintiff and not Defendant Wells who must pay the Excessive HOA Assessments and Related Costs.  Defendant Wells did this to avoid having to pay for such costs itself.

94.   The above merely provides representative examples of the vast and far reaching fraud perpetrated upon Plaintiff by Defendants as described herein.

**H.      The False Reimbursement Claim Forms**

95.   Pursuant to the MSSCs, the Excessive HOA Assessments and Related Costs are not reimbursable as Servicing Advances to Defendants by Plaintiff.

96.   However, in another scheme, if the Defendants do pay the Excessive HOA Assessments and Related Costs to the HOAS during the time they are servicing the loans, when the Defendants file Servicing Advance reimbursement claims forms for the Excessive HOA Assessments and Related Costs with Fannie Mae (on Form 571) and Freddie Mac (on Form 104SF), Defendants and falsely represent and certify that such amounts are within Fannie Mae's and Freddie Mac's approved expense limits, when they are not.

97.   On the reimbursement claim forms, the Defendants will "re-categorize" the Excessive HOA Assessments and Related Costs which are not reimbursable expenses pursuant to the MSSCs, into expense categories which are reimbursable pursuant to the MSSCs.

98.   By "re-categorizing" these non-reimbursable expenses into reimbursable expenses on the

1    reimbursement claim forms, the Defendants deceive Plaintiff into paying money to Defendants

2    that is not otherwise owed or reimbursable under the MSSCs.

3    99.   For example, regarding a Subject Unit located at 5173 Estasi St., Las Vegas, NV, wherein

4          Defendant Wells Fargo Bank, NA., assigned the trust deed to Freddie Mac and serviced the

5          loan and wherein Freddie Mac foreclosed and took title on February 16, 2010, a collection

6          agency made demand for $9,933.08 on March 8, 2010.

7    100.  Much of the demand was for Excessive HOA Assessments and Related Costs which are non-

8          reimbursable expenses for which Defendant Wells Fargo Bank, NA., is liable.

9    101.  In April of 2010, Defendant Wells Fargo Bank, NA., re-categorized the Excessive HOA

10         Assessments and Related Costs into categories called, "Misc Foreclosure or Bankruptcy

11         Expenses," and "Statutory Expenses" such that the expenses conformed to the MSSCs'

12         reimbursable classifications when, in fact, the expenses were non-reimbursable.

13   102.  Similarly, regarding a Subject Unit located at 7852 Carysford Ave., Las Vegas, NV, wherein

14         Defendant Wells Fargo Bank, NA., assigned the trust deed to Freddie Mac and serviced the

15         loan and wherein Freddie Mac foreclosed and took title on June 10, 2010, a collection agency

16         made demand for $1,768.99 on July 2, 2010.

17   103.  Much of the demand was for Excessive HOA Assessments and Related Costs which are non-

18         reimbursable expenses for which Defendant Wells Fargo Bank, NA., are liable.

19   104.  In July of 2010, Defendant Wells Fargo Bank, NA., re-categorized the Excessive HOA

20         Assessments and Related Costs into categories called, "Misc Foreclosure or Bankruptcy

21         Expenses," and "Statutory Expenses" such that the expenses conformed to the MSSCs'

22         reimbursable classifications when, in fact, the expenses were non-reimbursable.

23   105.  Similarly, regarding a Subject Unit located at 9237 January Dr., Las Vegas, NV, wherein

24         Defendant Wells Fargo Bank, NA., assigned the trust deed to Freddie Mac and serviced the

25         loan and wherein Freddie Mac foreclosed and took title on April 9, 2010, a collection agency

26         made demand for $5,576.78 on May 18, 2010.

27   106.  Much of the demand was for Excessive HOA Assessments and Related Costs which are non-

28

1 reimbursable expenses for which Defendant Wells Fargo Bank, NA., are liable.

2 107. In June of 2010, Defendant Wells Fargo Bank, NA., re-categorized the Excessive HOA

3   Assessments and Related Costs into categories called, "Misc Foreclosure or Bankruptcy

4   Expenses," and "Statutory Expenses" such that the expenses conformed to the MSSCs'

5   reimbursable classifications when, in fact, the expenses were non-reimbursable.

6 108. In each such case, at the time of the filing of the reimbursement claim forms, by "re-

7   categorizing" these non-reimbursable expenses into reimbursable expenses on the

8   reimbursement claim forms, Defendants submit false claims which cause Plaintiff to pay

9   money to Defendants which Plaintiff did not owe.

10        **COUNT I: VIOLATIONS OF 31 U.S.C. § 3729**

11          **(False Claims of the Defendants)**

12 109. Relators incorporate each and every paragraph of this complaint as though fully set forth

13   herein.

14 110. Pursuant to 31 U.S.C.A. § 3729, and as more particularly described above, Relators seek a

15   recovery on behalf of the United States for all false claims submitted by the Defendants and

16   all false certifications made to Plaintiff (as principals and as master servicer and guarantor of

17   the mortgage loans of the MBS Trusts,) on a national basis and seek as compensatory damages

18   all amounts that the Defendants received, avoided, failed to pay, or caused Fannie Mae and

19   Freddie Mac to pay for the Excessive HOA Assessments, the Related Costs, Servicing

20   Advances and loan servicing fees.

21 111. The Defendants falsely certified to Fannie Mae and Freddie Mac that such loans complied with

22   the MSSCs, complied with local law and the CC&RS, and that the Defendants' servicing

23   actions conformed to the MSSCs, when, in fact, they did not. These false certifications resulted

24   in Plaintiff (and the MBSs) owning or guarantying defaulted mortgage loans which exceeded

25   the value of the underlying Subject Unit. But for the false certifications, Plaintiff would not

26   have suffered losses connected with the default of such loans.  Further, Plaintiff would not

27   have incurred loan servicing fees, Servicing Advances, Excessive Assessment Amounts and

28

1   Related Costs regarding said loans.  Therefore, all such economic losses as a result of the

2   Defendants' false certifications and false claims constitute damages for which the Defendants

3   are obligated to recompense Plaintiff.

4   112.   The Defendants knew that the claims, statements, representations, and certifications described

5   above were false within the meaning of 31 U.S.C. §3729(b), and caused the use or submission

6   of the false claims within the meaning of § (a)(l) and in the making of false certifications.

7   113.    The Defendants are liable in this action for civil penalties of not less than $5,000 and not more

8   than $10,000, plus three (3) times the amount of damages which the Plaintiff sustained because

9   of the acts as described herein.

10   WHEREFORE, the UNITED STATES of AMERICA on relation of JAMES R. ADAMS and

11  PUOY K. PREMSRIRUT respectfully demand judgement against Defendants awarding treble the

12  damages to the government, a penalty of $10,000 for each false claim, all attorneys fees and costs

13  incurred in pursuing this action and any and all other relief which the Court deems proper. Relators

14  further respectfully demands that the Court award them 30% of any recovery to the government in this

15  suit.

16   DATED this 17th day of January, 2013.

17

18                                       LAW OFFICES OF SIGAL CHATTAH

19                                       _/s/ Sigal Chattah_____
                                         SIGAL CHATTAH, ESQ.
20                                       Nevada Bar No. 8264
                                         5875 S. Rainbow Blvd., Suite 204
21                                       Las Vegas, Nevada 89118
                                         Tel: (702) 360-6200
22                                        Fax: (702) 643-6292
                                         chattahlaw@gmail.com
23                                       *Attorney for Relators*

24

25

26

27

28