1

2

3

4

5

6                              **UNITED STATES DISTRICT COURT**

7                                    **DISTRICT OF NEVADA**

8

9    UNITED STATES OF AMERICA ex rel. James      )
     R. Adams et al.,                            )
                                                  )
10                        Plaintiff,             )
                                                  )          2:11-cv-00535-RCJ-PAL
11             vs.                               )
                                                  )
12   WELLS FARGO BANK NATIONAL                   )               **ORDER**
     ASSOCIATION et al.,                         )
13                                                )
                          Defendants.            )
14   _____ )

15          This is a federal qui tam action against various mortgage lenders and homeowner

16   associations for violations of the False Claims Act ("FCA").  Pending before the Court is a

17   Motion to Dismiss (ECF No. 100).  For the reasons given herein, the Court grants the motion.

18   **I.      FACTS AND PROCEDURAL HISTORY**

19          The Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan

20   Mortgage Corporation ("Freddie Mac") (collectively, "the GSEs") are government sponsored

21   entities ("GSE") created by Congress to purchase mortgage loans from originating lenders so that

22   the lenders can continue to make additional loans. (*See* Third Am. Compl. ¶¶ 5, 9–10, Jan. 18,

23   2013, ECF No. 43).  As of 2008, the GSE had purchase approximately 80% of al home

24   mortgages in the United States. (*Id.* ¶ 11).  In 2008, Congress passed the Housing and Economic

25   Recovery Act of 2008, which act created the Federal Housing Finance Agency ("FHFA"), a

1   federal agency with the power to take control of the GSE, which it did on September 6, 2008,

2   placing the GSE under its conservatorship. (*See id.* ¶¶ 12–15).

3          When the GSE purchase home loans from lenders, they often package groups of loans

4   into mortgage-backed securities ("MBS"), which are placed into trusts ("MBS Trusts"), shares of

5   which are in turn sold to investors, who receive certificates representing their pro rata shares in

6   the MBS Trusts, and according to which the certificate holders are paid interest and principal.

7   (*Id.* ¶¶ 17–22).  The GSE guarantee these payments, regardless of the financial health of the

8   mortgages in the MBS. (*Id.* ¶¶ 23–25).  Part of the guaranty by the GSE includes a promise to

9   repurchase defaulted mortgages from MBS Trusts in order to avoid any losses to certificate

10  holders that would otherwise result from the default of mortgages in the certificate holders'

11  respective MBS Trusts. (*See id.* ¶ 26).  The incidence of this procedure has soared since the real

12  estate crash. (*See id.* ¶¶ 27–28).  The GSE often approve "short sales" of homes, i.e., sales for

13  less than the amount owed to the GSE by the mortgagor, but the GSE are required to make the

14  certificate holders whole. (*See id.* ¶¶ 29–31).  The GSE are also required to make certificate

15  holders whole in cases where the GSE foreclose on a home and receive less at auction than the

16  amount due on the loan. (*Id.* ¶¶ 32–33).  In either case, the GSE repurchases the defaulted

17  mortgage from the MBS Trust for 100% of the principal amount and suffers the loss from the

18  foreclosure or short sale itself. (*See id.* ¶¶ 34–35).

19         Defendants listed under the Third Amended Complaint ("TAC") are sixteen banks,

20  lenders, and loan servicers: Aurora Loan Services, LLC ("Aurora"); BAC Home Loans

21  Servicing, LP ("BAC"); Bank of America, NA ("BOA"); Chase Home Finance, LLC ("Chase");

22  Citimortgage, Inc. ("Citi"); Countrywide Home Loans Servicing, LP ("Countrywide Servicing");

23  Countrywide Home Loans, Inc. ("Countrywide"); EMC Mortgage Corp. ("EMC"); GMAC

24  Mortgage Corp. ("GMAC"); JPMorgan Chase Bank, NA ("JPMorgan"); Nationstar Mortgage,

25  LLC ("Nationstar"); Ocwen Loan Servicing, LLC ("Ocwen"); Onewest Bank, FSB ("Onewest");

1   PHH Mortgage Corp. ("PHH"); US Bank, NA ("US Bank"); and Wells Fargo Bank, NA ("Wells

2   Fargo"). (*See id.* 1).[1]  The various agreements between Defendants and the GSE (the

3   "Agreements") required the GSE to purchase loans from Defendants and/or permitted

4   Defendants to service loans the GSE purchased from Defendants or others. (*Id.* ¶ 36).  The

5   Agreements incorporated by reference the terms of various selling and servicing guides

6   ("Mortgage Selling and Servicing Contracts" or "MSSC"). (*Id.* ¶ 38).  Under the MSSC,

7   Defendants warrant to the GSE that the loans they sell to the GSE, as well as Defendants'

8   servicing practices, comply with the terms of the MSSC and applicable law. (*Id.* ¶ 40).

9        Most important to the present action, Defendants via the MSSC made the following

10   warranties to the GSE as to mortgages on residential properties subject to common ownership

11   statutes ("Subject Properties"): (1) that Defendants would advance their own funds to pay

12   homeowner association assessments ("HOA Assessments") when mortgagors failed to do so; (2)

13   that Defendants would be liable for and advance any HOA Assessments beyond six months of

14   regular HOA Assessments accruing before acquisition of the Subject Unit by the GSE ("Excess

15   HOA Assessments"); (3) Defendants would be liable for any collection costs of an HOA; (4) that

16   Defendants would be liable for any interest, penalties, or other fees on Subject Units; (5) that all

17   HOA Assessments would be current upon the acquisition of a Subject Unit by the GSE; (6) that

18   Defendants would indemnify and hold harmless the GSE as against any losses resulting from

19   Defendants' breach of these warranties; (7) that Defendants would comply with all existing laws

20   and covenant, conditions, and restrictions ("CC&R") relating to Subject Units; and (8) that

21   Defendants would not request reimbursement from the GSE for HOA Assessments, taxes,

22   insurance, or repairs ("Servicing Advances") inconsistently with these warranties (the

23   "Certifications"). (*See id.* ¶¶ 41–44).  Most notably, if Excess HOA Assessments are due on a

24   ――――――――――

25        [1]Although captioned as the "Second Amended Complaint," the document at ECF No. 43
is in fact the Third Amended Complaint.

1  Subject Property, it is Defendants, not the GSE who are liable therefor under the MSSC. (*See id.*

2  ¶¶ 48–49).

3        Relators allege that Defendants routinely violate the False Claims Act ("FCA"), 31

4  U.S.C. § 3729 *et seq.*, by failing to pay Excess HOA Assessments such as monthly assessments

5  in excess of six months or regular assessments, abatement charges, collection costs, fines, etc.

6  when HOAs and their attorneys demand payment—assessments and fees for which Defendants,

7  not the GSE, are clearly liable under the MSSC—and then assigning the subject mortgages to the

8  GSE, falsely certifying that Defendants have complied with the MSSC, knowing that they have

9  not done so because they have failed to pay Excess HOA Assessments, and knowing that the

10  HOAs will continue to demand payment for Excess HOA Assessments directly from the GSE, .

11  (*See id.* ¶¶ 1, 51–57).  Defendants make these false certifications so that the GSE will accept the

12  assignment of the subject mortgages and continue to permit Defendants to service them for a fee.

13  (*Id.* ¶ 58).  Additionally, Defendants request Servicing Advances using Form 571 with Fannie

14  Mae and Form 104SF with Freddie Mac, falsely certifying that they have satisfied the

15  Certifications so that the GSE will reimburse Defendants for these unpermitted expenses. (*Id.*

16  ¶ 60).

17        One of the Certifications Defendants must make to the GSE in order to serve as paid

18  servicers on a loan a Defendant has assigned to the GSE is that any and all HOA Assessments

19  that could become superior to the GSE's lien are current, that Defendants have contacted HOAs'

20  management companies to ensure all assessment bills are directed to Defendants, and that

21  Defendants pay the bills as they come due, but Defendants routinely make this Certification when

22  it is untrue, resulting in that the GSE must pay Excess HOA Assessments to prevent HOA

23  foreclosures on GSE-owned properties. (*See id.* ¶¶ 61–68).  It is at this point that Relators' theory

24  becomes  a bit complex.  Relators appear to allege two theories of false claims.  First, that

25  Defendants make "reverse" false claims by certifying that they have paid any Excess HOA

1    Assessments when they in fact have not made such payments, and because of this false

2    certification, the GSE are ultimately forced to pay these amounts.  Second, that Defendants

3    should be held liable for the direct false claims made by HOAs to the GSE ("False Demands")

4    when the GSE sell GSE-owned homes to third-party buyers after foreclosure. (*See id.* ¶¶ 68–69).

5    The GSE are thereby forced to pay Excess HOA Assessments to HOA out of escrow in order to

6    clear the title to complete sales to third-party buyers. (*See id.*).  Relators seek to hold Defendants

7    liable for these direct false claims.  Relators recount several examples of the complained-of

8    practices. (*See id.* ¶¶ 81–108).

9         Relators sued lenders, servicers, and over one-thousand (1000)  HOAs in this Court.  The

10   TAC lists sixteen lenders and servicers as Defendants, omits any HOAs as Defendants, and lists a

11   single cause of action under the FCA.  Although the original complaint accused the hOAs of

12   making the direct false claims to the GSE, the TAC apparently seeks to hold the Defendant

13   lenders and servicers indirectly liable for the HOAs' direct false claims to the GSE.  Defendants

14   have moved to dismiss.

15   **II.   LEGAL STANDARDS**

16        Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

17   claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

18   what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

19   (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

20   that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule

21   12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720

22   F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for

23   failure to state a claim, dismissal is appropriate only when the complaint does not give the

24   defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*

25   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is

1    sufficient to state a claim, the court will take all material allegations as true and construe them in

2    the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

3    Cir. 1986).  The court, however, is not required to accept as true allegations that are merely

4    conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

5    *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

6    with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own

7    case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79

8    (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff

9    pleads factual content that allows the court to draw the reasonable inference that the defendant is

10   liable for the misconduct alleged.").  In other words, under the modern interpretation of Rule

11   8(a), a plaintiff must not only specify a cognizable legal theory (*Conley* review), but also must

12   plead the facts of his own case so that the court can determine whether the plaintiff has any

13   plausible basis for relief under the legal theory he has specified, assuming the facts are as he

14   alleges (*Twombly-Iqbal* review).

15        "Generally, a district court may not consider any material beyond the pleadings in ruling

16   on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the

17   complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

18   *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents

19   whose contents are alleged in a complaint and whose authenticity no party questions, but which

20   are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

21   motion to dismiss" without converting the motion to dismiss into a motion for summary

22   judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule

23   of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

24   *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court

25   considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

1  summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.
2  2001).

3  **III.    ANALYSIS**

4          Defendants ask the Court to dismiss for four reasons: (1) untimely service; (2) lack of
5  subject matter jurisdiction under the FCA's "public disclosure bar," 31 U.S.C. § 3730(e)(4); (3)
6  failure to plead the claims with particularity; and (4) failure to state a claim in general.
7  Defendants also note that although Relators had leave to file the First Amended Complaint as of
8  right, they filed the Second and Third Amended Complaints without leave of the Court or
9  permission from Defendants, as required.

10         **A.    Service of Process**

11         Defendants argue that they have not been properly served with the TAC both because the
12  TAC was filed without leave and because it was served after the January 28, 2013 deadline to
13  effect service.  Relators filed the Complaint on April 8, 2011.  They filed the First Amended
14  Complaint ("FAC") on July 29, 2011 before any party had responded to the Complaint via
15  Answer or Rule 12 motion.  Assuming for the sake of argument that the FAC was filed within
16  twenty-one days of service of the Complaint, the FAC was permitted without leave. *See* Fed. R.
17  Civ. P. 15(a)(1).  Two HOAs filed a Motion to Dismiss (ECF No. 29) on August 9, 2012.  The
18  parties stipulated to dismiss as against those movants without prejudice on January 16, 2013,
19  Relators voluntarily dismissed most Defendants later the same day, and two days later, Relators
20  filed the Second Amended Complaint ("SAC") without leave.  The SAC, however, erroneously
21  included the hundreds of voluntarily dismissed Defendants, so Relators filed the TAC later that
22  day, which they labeled as the SAC.  On February 8, 2013, Relators filed Certificates of Service
23  indicating service having been effected between January 23, 2013 and January 25, 2013 upon the
24  statutory registered agents of fourteen Defendants (all Defendants except Chase and Countrywide
25  Servicing). (*See* Certificates of Service, ECF Nos. 65 to 65-13).

1    The Court will grant retroactive leave to file the TAC.  The Court should give leave freely

2    when justice so requires, except where the opposing party would be prejudiced. *See* 6 Charles

3    Alan Wright et al., *Federal Practice and Procedure* § 1484 (3rd ed. 2010).  The Court is not

4    convinced that Defendants would be greatly prejudiced here.  The other potential problem is the

5    apparent total lack of service until the service of the TAC in January 2013.  The filing of an

6    amended complaint does not vitiate the failure to serve the original complaint within 120 days of

7    filing it under Rule 4(m); a party must make a diligent effort to serve the original complaint, or

8    some amended version thereof, within 120 days of filing the original complaint. *See Wei v. State*

9    *of Hawaii*, 763 F.2d 370, 372 (9th Cir. 1985); *Bryant v. Brooklyn Barbeque Corp.*, 130 F.R.D.

10   165, 667–69 (W.D. Mo. 1990) ("This interpretation of the good cause requirement of [Rule

11   4(m)] comports with common sense: if a plaintiff who had not shown good cause for failing to

12   serve a complaint with the 120 day period was allowed to file an amended complaint after that

13   time period had passed, there would be no incentive to serve the complaint in a timely manner

14   and the purpose of [Rule 4(m)], to encourage prompt service, would be emasculated." (footnote

15   omitted)).  Relators appear at first glance to have failed to serve any version of the complaint

16   upon Defendants for over 650 days.  But the original Complaint remained sealed while the

17   Attorney General considered intervention.  The Court unsealed it on April 24, 2012, upon the

18   Attorney General's declination to intervene, and at a time when the FAC was operative.  Relators

19   still failed to serve any version of the complaint for over 270 days thereafter, but as Relators

20   correctly note, the magistrate judge ordered them to serve some version of the complaint within

21   120 days of his order of September 28, 2012. (*See* Order, ECF No. 37).  The fourteen Defendants

22   served between January 23, 2013 and January 25, 2013, were served within 120 days of that

23   order (January 26, 2013 was the 120th day).  The Court therefore will not dismiss for failure to

24   timely serve Defendants under Rule 4(m), except as to Chase and Countrywide Servicing, who

25   do not appear ever to have been served.

**B.     Public Disclosure**

Next, Defendants note that according to the public disclosure exception to the FCA:

The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—

> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>
> (iii) from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).  A court first asks whether there has been a "public disclosure," and if so whether the litigant is the "original source" of that disclosure. *See United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 (9th Cir. 2009).  Because the rule is a jurisdictional bar, "[r]elators, as the qui tam plaintiffs, bear the burden of establishing [these prongs to their favor] by a preponderance of the evidence." *Id.* (citing *United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1018 (9th Cir. 1999)).

Defendants note and attach articles reporting the HOA fee issues upon which the TAC is based. *See* Kate Berry, *Mortgage Servicers' Latest Troubles: Homeowners Association Fees*, American Banker, July 11, 2011, at ECF No. 100-4; Lisa Magill, *Associations Facing Lawsuits over Claimed Billing Errors*, Florida Condo & HOA Law Blog, July 18, 2011, at ECF No. 100-5. Defendants also argue that Relators are not the original sources of these public disclosures.

The Court rejects the objections that the articles are unauthenticated, as articles purporting to be newspapers or periodicals are self-authenticating. *See* Fed. R. Evid. 902(6).  The fact that the articles list 2013 as their copyright dates does not seriously put into doubt the separately listed publication date, particularly where the publication date is more specific.

1   Internet websites often list the current date as the copyright date, even if the publication date is

2   different.  Nor is there any hearsay problem, as the material issue is the fact of publication, not

3   the truth of the statements published.  And although Relators' allegations in the TAC may be

4   more specific, the articles clearly discuss the same alleged malfeasance or fraud, even if the

5   articles do not call it that.  The articles note that lenders typically refuse to pay HOA charges and

6   that HOAs later attempt to charge Fannie Mae and Freddie Mac, even though the lenders are

7   obligated to pay those charges.  Relators argue that the disclosures in the articles were not

8   "substantially the same" because the articles do not allege fraud or detail any fraudulent scheme

9   with the same particularity as the TAC.  The Court rejects this argument.  "For a qui tam suit to

10  be 'based upon' a prior public disclosure, § 3730(e)(4)(A), the publicly disclosed facts need not

11  be identical with, but only substantially similar to, the relator's allegations." *Horizon Health*

12  *Corp.*, 565 F.3d at 1199 (citing *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d

13  1181, 1189 (9th Cir. 2001); *United States ex rel. Biddle v. Bd. of Trustees of Leland Stanford, Jr.*

14  *Univ.*, 161 F.3d 533, 537 (9th Cir. 1998)).

15      In summary, the articles attached to the present motion pre-date the FAC and contain

16  facts substantially similar to those upon which the FAC is based.  However, the original

17  Complaint predates the attached articles and contains the same basic allegations.  Defendants

18  attach no news articles indicating public disclosure before the filing of the Complaint.  The state

19  court complaint and order Defendants also attach—only the latter of which predates the

20  Complaint in the present case—concern lawsuits over the lawful extent and priority of the super-

21  priority HOA lien in Nevada under NRS section 116.3116, not any dispute over GSE versus

22  lender or servicer liability to clear such a lien upon foreclosure by the GSE.  The Court therefore

23  finds that Relators have satisfied their burden to show that the relevant information was not

24  publicly disclosed before the Complaint was filed, and the Court will not dismiss for that reason.

25  ///

1          C.      Failure to State a Claim

2          The TAC sounds in contractual indemnification and equitable subrogation.  Ultimately, it

3    is the GSE who are (potentially) aggrieved that they have been forced to pay certain HOA

4    Assessments in order to protect their interests in the Subject Properties under circumstances

5    where Defendants should be made to reimburse them, either due to the contractual

6    indemnification requirement of the MSSC or via equitable subrogation.  Both of these theories

7    are probably sufficiently pled, but Relators plainly have no standing to bring these common law

8    claims on behalf of the GSE.  This is of course why Relators have characterized the claim as an

9    FCA claim.  But there is only an FCA claim if Defendants have made false claims as defined by

10   the FCA, whether direct or "reverse," against the United States.  If that is the case, then Relators

11   can bring the FCA claim on behalf of the United States.  If not, there is no claim.  The Court

12   must therefore examine whether a false claim as defined by the FCA is actionable under that

13   statute based upon a putative false claim made to a GSE.

14         First, the GSE are not "agencies, establishments, or instrumentalities" of the United

15   States.  The GSE are private corporations created by the government. *See, e.g.*, 12 U.S.C.

16   § 1716b ("The purposes of this title include the partition of the Federal National Mortgage

17   Association as heretofore existing into two separate and distinct corporations, each of which shall

18   have continuity and corporate succession as a separated portion of the previously existing

19   corporation.  One of such corporations, to be known as Federal National Mortgage Association,

20   will be a Government-sponsored private corporation . . . .").  As Defendants also note, the law

21   authorizing conservatorship specifically noted that "limited-life regulated entity" employees

22   would not thereby become officers or employees of the United States and that "[a] limited-life

23   regulated entity is not an agency, establishment, or instrumentality of the United States." *See* 12

24   U.S.C. § 4617(i)(10)(A)–(B).  "Limited-life regulated entity" is defined under § 4602 as "an

25   entity established by the Agency [the FHFA] under section 4617(i) of this title with respect to a

Federal Home Loan Bank in default or in danger of default or with respect to an enterprise in default or in danger of default." *See id.* § 4602(2), (13).  Section 4617(i) in turn notes that if the FHFA were to be appointed as receiver for Fannie Mae or Freddie Mac, the receivership, i.e., the conservatorship, would be a limited-life regulated entity succeeding to the GSE's charter. *See id.* § 4617(i)(2)(A)(i)–(ii).  Even without the express disclaimer in the statute, the conservatorship of the United States does not make the GSE agencies, but, on the contrary, confirms that they are not agencies.  If the GSE were agencies of the United States, there would be no need for Congress to have created the FHFA to take conservatorship of them, because the President could have directed their activities through whichever agency to which they ostensibly belonged.  The very fact of conservatorship necessarily implies a sovereign–subject division between conservator and conservatee.

Third, the United States' majority ownership of the GSE stock does not change the result. It is well established—indeed, it is one of the purposes of the corporate law—that shareholders and corporations are separate entities.  The property of a corporation is not the property of its shareholders.  The shareholder has only the right to resell his stock to third parties, certain voting rights, rights to dividends, and rights to surplus upon dissolution, all depending upon the class of stock.  Apart from a proportionately increased share in these kinds of rights, a controlling or majority shareholder gains nothing but a fiduciary duty to other shareholders.  The property of the corporation is still not his property.  These are all familiar principles of corporate law.

In summary, the GSE are not government agencies by virtue of their creation, their conservatorship, or the United States' majority ownership of their stock.  The courts have treated the GSE as public entities in some way, but not in all ways.

Relators rely primarily upon *Rust v. Johnson*, 597 F.2d 174 (9th Cir. 1975).  But the relevant holding in that case has been superseded by statute.  In *Rust*, the City of Los Angeles foreclosed upon real property for nonpayment of a street improvement assessment at a time when

1 Fannie Mae held a deed of trust against the property. *See id.* at 176. The *Rust* court ruled that

2 Fannie Mae was a federal instrumentality in the context of the issues presented in that case,

3 because although Congress had transformed Fannie Mae into a private corporation in 1968,

4 Fannie Mae had retained certain statutory exemptions from local business licenses and taxation,

5 and "[we] have been unable to find anything in the legislative history or in the statutes governing

6 the operation of FNMA which supports the conclusion that Congress intended to strip FNMA of

7 its status as a federal instrumentality." *See id.* at 177–78. A different panel of the Court of

8 Appeals later ruled to the contrary in another context, however, without citing to *Rust*. *See Am.*

9 *Bankers Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 75 F.3d 1401, 1409 (9th Cir. 1996)

10 ("While Freddie Mac is chartered to pursue federal governmental objectives, the level of

11 government control over the corporation is so much lower than that exercised over Amtrak we

12 conclude that, upon an application of *Lebron* principles, that Freddie Mac is not a government

13 agency subject to the Fifth Amendment's Due Process Clause."). In any case, it is clear that in

14 2008 Congress intended to strip Fannie Mae and Freddie Mac of any status as federal

15 instrumentalities they may have had upon FHFA's conservatorship. *See* 12

16 U.S.C. § 4617(i)(10)(A) ("A limited-life regulated entity is not an agency, establishment, or

17 instrumentality of the United States."). This Court's ruling in *Nevada ex rel. Hager v.*

18 *Countrywide Home Loans Servicing, LP*, 812 F. Supp. 2d 1211 (2011) is not to the contrary. In

19 that case, the Court ruled that although *Rust* had held that Fannie Mae was a federal

20 instrumentality for the purposes of *M'Culloch v. Maryland*-like problems, i.e., the exercise of

21 state power over property held by Fannie Mae, it was not a federal instrumentality for tax

22 purposes, although it was still statutorily exempt from local taxation while under the

23 conservatorship of FHFA. *See id.* at 1215–1218. And as Defendants note in reply, even Amtrak,

24 which the Supreme Court has held to be a federal instrumentality for some purposes, *see Lebron*

25 *v. Nat'l R.R. Passenger Corp.*, 513, U.S. 374, 394 (1995), is not a proper plaintiff or relatee for

1   the purposes of an FCA claim, *see United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d

2   488, 491 (D.C. Cir. 2004) (Roberts, J.) ("[A]t all times since the company was created in 1971[,]

3   Amtrak's organic statute has flatly stated that the company 'is not a department, agency, or

4   instrumentality of the United States Government.'"), precisely because of statutory language

5   disclaiming its federal agency, and the 2008 statute here contains similar language as to Fannie

6   Mae and Freddie Mac under the FHFA's conservatorship.

7           The GSE are therefore not instrumentalities of the United States, and an alleged attempt

8   to defraud them is not an alleged attempt to assert a false claim against the United States under

9   the FCA.  A false claim against Fannie Mae or Freddie Mac is neither a "request or demand . . .

10  for money or property . . . presented to an officer, employee, or agent of the United States," *see*

11  31 U.S.C. § 3729(b)(2)(A)–(A)(i); 12 U.S.C. § 4617(i)(10)(B), nor a "request or demand . . . for

12  money or property . . . made to a contractor, grantee, or other recipient, . . . [where] the United

13  States Government . . . has provided any portion of the money or property requested or

14  demanded," *see* 31 U.S.C. § 3729(b)(2)(A)–(A)(ii)(II).  Relators have therefore failed to state a

15  claim.  The Court need not examine the arguments under Rule 9(b).

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

1

**CONCLUSION**

2          IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 100), the Motion for

3    Leave to File Excess Pages (ECF No. 99), and the Motions for Leave to File Briefs (ECF Nos.

4    158, 166) are GRANTED.

5          IT IS FURTHER ORDERED that the Motion to Disqualify Relator Premsrirut (ECF No.

6    148) is DENIED as moot.

7          IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

8          IT IS SO ORDERED.

9    Dated this 11th day of December, 2013.

10

11                                    _____
                                          ROBERT C. JONES
12                                      United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25